**In re Theresa M. SQUILLACOTE, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 98–BG–1847.**

District of Columbia Court of Appeals.

Argued Dec. 7, 2001.

Decided Jan. 17, 2002.

Caroline A. Judge, with whom Mark W. Foster, Washington, DC, was on the brief, for respondent.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Joyce E. Peters, Bar Counsel, and Michael S. Frisch and Elizabeth A. Herman, Senior Assistant Bar Counsels, filed a brief for the Office of Bar Counsel.

Before WAGNER, Chief Judge, and SCHWELB and FARRELL, Associate Judges.

PER CURIAM:

Theresa Marie Squillacote, a member of our Bar, was convicted by a jury of (1) conspiracy to commit espionage, in violation of 18 U.S.C. § 794(a) & (c); (2) attempted espionage and aiding and abetting, in violation of 18 U.S.C. §§ 2, 794(a); (3) obtaining national defense information and aiding and abetting, in violation of 18 U.S.C. §§ 2, 793(b); and (4) making false official statements, in violation of 18 U.S.C. § 1001. Ms. Squillacote was sentenced to imprisonment for 262 months. Her convictions were affirmed on appeal. *United States v. Squillacote*, 221 F.3d 542 (4th Cir.2000), *cert. denied*, 532 U.S. 971, 121 S.Ct. 1601, 149 L.Ed.2d 468 (2001).

On January 5, 1999, this court suspended Ms. Squillacote from practice and directed the Board on Professional Responsibility to determine the nature of the discipline that should be imposed by the court. The court specifically directed the Board to review the elements of the offenses to determine whether the crimes involve moral turpitude *per se*, and thus require disbarment. *See* D.C.Code § 11–2503(a) (2001).

On March 9, 2001, in a Report and Recommendation written by the Board's Chair, Ms. Patricia A. Brannan, a majority of the Board concluded that the three espionage-related offenses of which Ms. Squillacote was convicted constitute moral turpitude *per se*. One member of the Board, Mr. Paul L. Knight, dissented in a written opinion. A copy of the Board's Report and Recommendation, including Mr. Knight's dissent, is attached hereto as Attachment A. Both Bar Counsel and Ms. Squillacote excepted to the Board's recommendation, contending that the espionage-related offenses do not constitute moral turpitude *per se*.

The arguments on both sides of this issue have been ably presented in the majority and dissenting opinions set forth in Attachment A. The question is one of law, and we have independently reviewed the two opinions in the Board's Report, as well as the written and oral submissions of the Board and of the other parties. We conclude, substantially for the reasons stated in the opinion for the majority of the Board, that the espionage-related offenses constitute moral turpitude *per se*. Accordingly, Theresa M. Squillacote is hereby disbarred.

*So ordered.*[1]

## ATTACHMENT A

### *REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY*

This matter comes before the Board on Professional Responsibility (the "Board") to determine the discipline to be imposed upon Respondent, a member of the Bar of the District of Columbia Court of Appeals (the "Court"). Respondent was convicted by the United States District Court for the Eastern District of Virginia of conspiracy to commit espionage, attempted espionage, obtaining national defense information, and making a false statement. We conclude that because Respondent was convicted of a crime that involves moral turpitude *per se*, she should be automatically disbarred by the Court pursuant to D.C.Code § 11–2503(a).

#### *Background*

#### *Procedural History*

Respondent is a member of the Bar of the Court, having been admitted by exami-

nation on February 28, 1984. Brief of Bar Counsel at 1.

Respondent was indicted, along with two other co-defendants, in the United States District Court for the Eastern District of Virginia, Alexandria Division (the "District Court"), by the February 1998 Term of the Grand Jury. Indictment, *United States v. Clark*, Crim. No. 97–948–M (E.D.Va.). On October 23, 1998, she was found guilty by jury verdict of: (1) conspiracy to commit espionage, in violation of 18 U.S.C. § 794(a), (c) ("Count 1"); (2) attempted espionage and aiding and abetting, in violation of 18 U.S.C. §§ 2, 794(a) ("Count 3") [1][;] (3) obtaining national defense information and aiding and abetting, in violation of 18 U.S.C. §§ 2, 793(b) ("Count 4"); and (4) false statements, in violation of 18 U.S.C. § 1001 ("Count 5"). Judgment, *United States v. Squillacote*, No. 98–CR–61–2 (E.D. Va Jan. 22, 1999) (Hilton, C.J.).

Bar Counsel filed a certified copy of the docket entry reflecting the findings of guilt with the Court on December 15, 1998; a certified copy of the judgment of conviction was later reported to the Court on February 12, 1999. On January 5, 1999, the Court suspended Respondent and directed the Board to institute a formal proceeding for determination of the nature of the final discipline to be imposed, and specifically to review the elements of the offenses for the purpose of determining whether or not the crimes involve moral turpitude within the meaning of D.C.Code § 11–2503(a). *In re Squillacote*, No. 98–BG–1847 (D.C. Jan.5, 1999).

---

1. On or about March 23, 2001, Ms. Squillacote filed an affidavit in conformity with D.C. Bar R. XI § 14(g).

1. The Grand Jury appears not to have returned a true bill as to a "Count 2." The indictment refers only to Counts 1 and 3–5. *See* Indictment, *United States v. Clark*, Crim. No. 97–948 M (E.D.Va.).

Bar Counsel filed a brief on February 1, 1999, arguing that the offenses at issue do not involve moral turpitude *per se* and recommending that the Board direct a hearing committee to consider whether Respondent's conduct involves moral turpitude on the facts. Respondent filed a response on October 2, 2000. While Respondent disagreed with many of Bar Counsel's characterizations of the activity that led to her conviction, she agreed that the matter should be referred to a hearing committee. After reviewing the initial filings from Bar Counsel and Respondent, the Board requested, by letter dated November 3, 2000, further briefing on why espionage should not be deemed to involve moral turpitude *per se*. In response, Bar Counsel and Respondent have filed further briefs, both concluding that the issue whether Respondent's conduct involves moral turpitude on the facts should be submitted to a hearing committee.

### Facts

In a case such as this, where our only task is to decide whether the statutes Respondent was convicted of violating involve moral turpitude *per se*, the facts of the actual case are largely irrelevant. *See In re Colson*, 412 A.2d 1160, 1164 (D.C. 1979)(en banc). Nonetheless, we include a brief factual background here to give context to the legal question of moral turpitude.[2]

Respondent was married to co-defendant Kurt Stand. Stand, whose parents were born in Germany, was recruited by the foreign intelligence arm of the East German intelligence agency. The East German agency trained Respondent and Stand. Respondent moved to Washington, D.C. and attended law school at the suggestion of the East German intelligence agency. Respondent worked as an attorney at the National Labor Relations Board, then on detail to the House Armed Services Committee. In 1991, she began work as an attorney at the Department of Defense (the "DOD"). At the DOD, she held a security clearance and had access to valuable information.

After the collapse of East Germany,[3] Respondent and her co-conspirators began spying on behalf of the then-Soviet Union. After the Soviet Union dissolved, Respondent continued her activities on behalf of the Russian Federation.

In 1995, Respondent established an espionage relationship with the Republic of South Africa by writing a letter, under a false name, to a senior official in the South African government and the South African Communist Party. Respondent and a co-conspirator then attempted to commit espionage with an individual who purported to be a South African intelligence officer but who, in fact, was an FBI agent operating undercover. Respondent copied three classified Department of Defense documents and delivered them, with an additional, original document, to the undercover agent. Respondent continued meeting and corresponding with the undercover agent until her arrest in October 1997.

### Analysis

Our inquiry begins with D.C.Code § 11–2503(a), which provides in pertinent part:

---

2. This brief factual statement is drawn from the Fourth Circuit opinion affirming Respondent's conviction, *United States v. Squillacote*, 221 F.3d 542 (4th Cir.2000), and from Indictment, *United States v. Clark*, Crim. No. 97–948 M.

3. East Germany (the German Democratic Republic) and West Germany (the Federal Republic of Germany) were unified on October 3, 1990.

When a member of the bar of the District of Columbia Court of Appeals is convicted of an offense involving moral turpitude, and a certified copy of the conviction is presented to the court, ... the name of the member of the bar so convicted shall be struck from the roll of the members of the bar and such person shall thereafter cease to be a member.

The question for the Board, then, is whether Respondent has been convicted of a crime of moral turpitude. "To be sure, the statute is mandatory in its terms." *Colson,* 412 A.2d at 1164. Once it is determined in one case that a particular offense is a crime of moral turpitude *per se*—that is, every conviction for that particular offense must necessarily involve moral turpitude—our inquiry is very limited. *See id.* We then ask only whether the respondent was convicted of the crime; if the Court agrees, his or her disbarment follows automatically. *See id.* If, however, a determination is made that an offense does not involve moral turpitude *per se,* we still consider, through referral to a hearing committee in the first instance, whether *on the facts* of the particular case the respondent engaged in a crime involving moral turpitude. *See id.* at 1165. If so, and the Court agrees, the respondent's disbarment follows. *See id.* In any event, a respondent is not permitted to retry his or her criminal case in the proceeding to determine whether the facts demonstrate moral turpitude. *See id.* at 1167. The record of conviction conclusively establishes the respondent's guilt; the only question is whether the particular crime involves moral turpitude. *See id.*

Respondent was convicted of four offenses: (1) conspiracy to commit espionage, 18 U.S.C. §§ 794(a), (c); (2) attempted espionage and aiding and abetting thereto, 18 U.S.C. §§ 2, 794(a); (3) obtaining national defense information and aiding and abetting thereto, 18 U.S.C. §§ 2, 793(b); and (4) making a false statement, 18 U.S.C. § 1001. Neither the Court nor the Board has ever considered whether any of the three espionage-related offenses constitutes moral turpitude *per se.* We accordingly proceed, as *Colson* directs, to consider whether any of those offenses involve moral turpitude *per se.*

There is no easy, bright-line definition of "moral turpitude." *See Colson,* 412 A.2d at 1167 ("[t]he term 'moral turpitude' has less than a finite definition"). The Court has stated that an offense of moral turpitude typically falls under one of three categories:

(1) "the act denounced by the statute offends the generally accepted moral code of mankind," *id.* at 1168; or

(2) "[a]n act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men or to society in general, contrary to the accepted and customary rule of right and duty between man and man," *id.* (quoting 2 *Bouv. Law Dictionary* 2247 (Rawle's 3d rev.)); or

(3) the "[c]onduct [is] contrary to justice, honesty, modesty, or good morals," *id.* (quoting *Black's Law Dictionary* 1160 (4th ed.1951)).

In evaluating the statute, we consider whether the least culpable offender under the terms of the statute necessarily engages in conduct that offends the *Colson* standard. *See In re Hutchinson,* 474 A.2d 842, 844 (D.C.1984). In other words, if the most benign conduct punishable under the statute does not plainly offend the *Colson* standard of moral turpitude, it cannot be said that the crime involves moral turpitude *per se.*

*Counts 1 and 3, 18 U.S.C. §§ 2, 794(a), (c).* In general, § 794(a) makes it a crime

to communicate or attempt to communicate to any foreign power any information related to the national defense of the United States, with intent or reason to believe that it is to be used to the injury of the United States *or to the advantage of a foreign nation.*[4] Section 794(c) of the statute makes conspiracy to commit a violation of § 794(a) a separate, punishable offense. Thus, § 794 punishes espionage in the classic sense: giving secret government defense-related information or documents with intent either to hurt the United States or to give aid to a foreign power. Count 1 involved conspiracy to transmit secret government defense-related documents with the intent either to hurt the United States or to give aid to a foreign power. Count 3 involved a separate change of attempted espionage in violation of § 794(a) and aiding and abetting espionage, in violation of the general aiding and abetting statute, 18 U.S.C. § 2.

*Count 4, 18 U.S.C. § 2, 793(b).* Section 793(b) punishes the obtaining of national defense information with the intent or reason to believe that the information will be used to the injury of the United States or to the advantage of a foreign nation.[5]

We first analyze the convictions under Counts 1, 3 and 4, because similar issues are raised by the statutes involved. Together, § 793 and § 794 punish both the acts of obtaining and transmitting in the course of espionage.

Bar Counsel contends that the offenses at issue here do not involve moral turpitude *per se.* Bar Counsel concludes that moral turpitude is not present on the face of the statutes because a defendant could be convicted based on intent to cause injury to the United States or to give advantage to a foreign nation (without necessarily harming the United States). Bar Counsel apparently assumes that the only element of such an offense that would involve moral turpitude *per se* would be to harm the United States, which is not necessarily present in every case of a conviction under § 794(a) or § 793(b). *See* Brief of Bar Counsel at 8.

We disagree with Bar Counsel's effort to separate the purposes of harming the United States or giving advantage to a foreign nation. When the Board asked by

---

4. Section 794(a) reads:

(a) Whoever, with intent or reason to believe that it is to be used to the injury of the United States or to the advantage of a foreign nation, communicates, delivers, or transmits, or attempts to communicate, deliver, or transmit, to any foreign government, or to any faction or party or military or naval force within a foreign country, whether recognized or unrecognized by the United States, or to any representative, officer, agent, employee, subject, or citizen thereof, either directly or indirectly, any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, note, instrument, appliance, or information relating to *the national defense, shall be punished by death or by imprisonment for any term of years or for life.*

5. Section 793(b) reads:

(b) Whoever, for the purpose [of obtaining information respecting the national defense *with intent or reason to believe that the* information is to be used to the injury of the United States, or to the advantage of any foreign nation,] and with like intent or reason to believe, copies, takes, makes or obtains, or attempts to copy, take, make, or obtain, any sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, document, writing, or note of anything connected with the national defense[,]

\* \* \*

Shall be fined under this title or imprisoned *not more than ten years, or both.*

its November 3, 2000 letter for case authority upholding that distinction, none was forthcoming.

In upholding the espionage statutes against constitutional attack, the Supreme Court in *Gorin v. United States*, 312 U.S. 19, 61 S.Ct. 429, 85 L.Ed. 488 (1941), explained: "The evil which the statute punishes is the obtaining or furthering of [ ] guarded information, either to our hurt or another's gain." *Id.* at 30, 61 S.Ct. 429. These crimes, whether the intent is to harm the United States or to aid another nation, require the prosecution to prove scienter. *See Gorin*, 312 U.S. at 28, 61 S.Ct. 429 ("[the statute] requires those prosecuted to have acted in bad faith. The sanctions apply only when scienter is established."); *United States v. Truong Dinh Hung*, 629 F.2d 908, 918 (4th Cir. 1980) ("[t]his scienter requirement is critically important"). A negligent or accidental disclosure cannot be punished under the provisions of § 793(b) or § 794(a).

The Court in *Gorin* explained why espionage is a serious crime damaging to the national interest even where the destination of our nation's secrets through espionage is a friendly nation. "No distinction is made between friend or enemy. Unhappily the status of a foreign government may change." *Gorin*, 312 U.S. at 29–30, 61 S.Ct. 429. A defendant who aids a foreign nation by providing it with our secrets harms the United States, although that harm may be indirect. An advantage to a foreign power today may turn into a deadly harm to the United States tomorrow. Since it is not possible to insure that our friends will remain friendly tomorrow, next year, or decades from now, it is not in the province of unauthorized persons to overrule on their own a determination that a document should be kept secret. The statute prohibits individuals from pursuing their own foreign policy. National secrets are kept secret for a reason: to prevent unauthorized persons or powers from getting them. Respondent, and others like her who violated these statutes, breach the national security by their actions, even if the destination of the secrets they disclose is a friendly foreign power.

The facts of *Gorin* highlight why the Board recommends here that §§ 794(a) and 793(b) be held to involve moral turpitude *per se*. In *Gorin*, an American civilian military official, Salich, had transmitted over fifty secret reports concerning Japanese activities in the United States before World War II to a Soviet spy, Gorin. *See Gorin*, 312 U.S. at 22–23, 61 S.Ct. 429. Both Salich and Gorin were convicted of espionage and their convictions were upheld by the Court. Under Bar Counsel's theory, Salich's conduct did not involve moral turpitude because he transmitted information to the advantage of a friendly foreign power, the Soviet Union, rather than for the purpose of causing injury to the United States. *Gorin* was decided in 1941; at the time, the Soviet Union was our ally. Indeed, a few months after the opinion in *Gorin* was released, we went to war alongside the Soviet Union against the Axis Powers. Within a few years, however, World War II had ended, the Cold War had begun, and the Soviet Union was our enemy. Having defeated the Japanese military, the United States had assumed a protectorate role over the Japanese civilian population. Thus, within a few short years after Salich and Gorin's espionage transmissions to an ally (the Soviet Union) concerning counter-intelligence efforts against our enemy (Japan), our enemy had become our ally, our ally had become our enemy, and our then-enemy had, through their activities, obtained key information about our intelligence and counter-intelligence network.

Respondent and Bar Counsel offer hypothetical facts that they claim demonstrate that some conduct punishable by § 794(a) and § 793(b) would not be base, vile, depraved, or offend the generally accepted moral code of mankind. We are not persuaded.

Respondent hypothesizes a prosecution under § 794 "against a civil servant working within a government office who, with intent to aid a peacetime ally of the United States, faxed a photograph of a new American fighter plane to a private citizen in Great Britain." Resp. Reply at 4. Such disclosure, to be punishable under § 794, would have to be done intentionally for the purpose of aiding another foreign power. The act of disclosure inevitably breaches the trust reposed in that employee to keep the material secret. Once the circle of secrecy is broken, there is no control over how the defense information will be used or where it will go. Those dangers and realities accompany every violation of § 794. It is the breach of trust that offends the generally accepted moral code of mankind when it occurs in a context of secret information involving the national defense.

The second *Colson* factor for moral turpitude is instructive here. Moral turpitude includes an "act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Colson*, 412 A.2d at 1168 (quoting 2 *Bouv. Law Dictio-*

*nary* 2247 (Rawle's 3d rev.)). In the area of foreign affairs, we can think of no violation of one's duty to society—other than treason—more base, vile, or depraved than an intentional act to breach the confidentiality of national defense secrets that have come into the hands of an individual. *See id.* If a member of our bar can be automatically disbarred for stealing more than $100 from the government, *see In re Milton*, 642 A.2d 839 (D.C.1994) (per curiam)(violation of 18 U.S.C. § 641 (theft of more than $100 from the United States government) is moral turpitude *per se*), we see no reason why a lawyer should not receive the same sanction for unlawfully taking or transmitting his or her country's national defense secrets.

Although not conclusive, we note that even a defendant who violated § 794 intending, as Bar Counsel and Respondent hypothesize, solely to aid another foreign nation (without harming the United States) could still receive the death penalty.[6] Even when the death penalty is not sought by the United States, the penalties for someone convicted of these statutes are severe. A single violation of § 794(a) can be punished with life imprisonment or a term for years. A violation of § 793 can be punished with up to ten years of incarceration. The United States Sentencing Guidelines make clear, in practice, the severity of these offenses. A violation of § 793 warrants a base offense level determination of between 30 and 35, while a violation of § 794 results in a base offense level between 37 and 42. *See U.S. Sentencing Guidelines Manual* §§ 2M3.1,

---

**6.** The death penalty is authorized only when a United States agent is killed as a result of the espionage, or the national defense information concerned nuclear weaponry, military spacecraft or satellites, early warning systems, other means of defense or retaliation against large-scale attack, war plans, communications intelligence or cryptographic information, or any other major weapons system or major element of defense strategy. 18 U.S.C. § 794(a). Although these special circumstances may not be present in a "least culpable" case, the fact that the death penalty is authorized at all for this offense gives the Board significant pause on the question of moral turpitude.

2M3.2 (1998). A single violation of § 793 for an offender with no prior record of convictions and no adjustments would translate into a sentence of between 97 and 210 months; for a single violation of § 794 for the same offender, the sentence would be between 210 months and life in prison.

It is clear why Congress and the Sentencing Commission have seen fit to provide such severe penalties for the offenses in question. Espionage—its component parts being the gathering and transmitting of national defense information—is a crime against the security of our republic. Unlike an assault or theft, the victim here is not one person but the entire nation.

Thus, we conclude that a criminal conviction under 18 U.S.C. § 793(b) or § 794(a) constitutes a conviction of a crime of moral turpitude *per se*. Respondent's convictions were for conspiracy to commit espionage under § 793(b) and attempted espionage under § 794(a). The fact that those convictions were for conspiracy and attempt counts does not alter the conclusion that her crimes involve moral turpitude *per se*. In *In re Lobar*, 632 A.2d 110 (D.C.1993) (per curiam), the Court held, "where ... the object of the conspiracy is a crime involving moral turpitude, a conviction for conspiracy to commit the underlying offense is itself a crime inherently involving moral turpitude." *Id.* at 111. The fact that an act of espionage was not fully completed-and, thus, the conviction was for an attempt—does not change our analysis because the requisite intent must still be shown and there must be proof that the defendant undertook a substantial step toward the commission of the crime. *See United States v. Burks*, 135 F.3d 582 (8th Cir.1998)(conviction for attempt crime requires proof of substantial step).

*Count 5, 18 U.S.C. § 1001.* In *In re Sweeney*, 725 A.2d 1013 (D.C.1999)(per curiam), the Court accepted the Board's recommendation that making a false statement in violation of 18 U.S.C. § 1001 is not a crime of moral turpitude *per se*. Since "[c]onviction of even one crime of moral turpitude requires disbarment, regardless of whether other convictions involved moral turpitude as well," *In re Eberhart*, 678 A.2d 1023, 1024 n. 2 (D.C.1996)(per curiam), we need not refer Respondent's conviction under 18 U.S.C. § 1001 (false statements) for a hearing on whether there was moral turpitude on the facts here.

*Conclusion and Recommendation*

Based on the foregoing, the Board recommends, pursuant to D.C.Code § 11–2503(a), that Respondent's name "be struck from the roll of the members of the bar." D.C.Code § 11–2503(a).

BOARD ON PROFESSIONAL RESPONSIBILITY
By: s/ Patricia A. Brannan
Patricia A. Brannan
Chair
Dated: March 9, 2001

All members of the Board concur in this Report and Recommendation, except Mr. Wolfson and Ms. Taylor, who were recused, and Mr. Knight, who has filed a separate dissenting opinion.

### DISSENT OF BOARD MEMBER PAUL L. KNIGHT

After considering the two espionage statutes in question, namely 18 U.S.C. § 793(b) and § 794(a), I am not convinced that they involve moral turpitude *per se*. The statutes in question prohibit a very broad range of conduct, some of which may not offend the generally accepted moral code of mankind or implicate moral depravity as that term is used and defined

in *In re Colson,* 412 A.2d 1160 (D.C.1979) (en banc).

Respondent was convicted of aiding and abetting attempted espionage, in violation of 18 U.S.C. §§ 794(a) & 2, aiding and abetting the obtaining of national defense information, in violation of 18 U.S.C. §§ 793(b) & 2, and making false statements, in violation of 18 U.S.C. § 1001. The elements of aiding and abetting attempted espionage, summarized from the instructions used during Respondent's trial, are: (1) that she aided and abetted an attempt to transmit documents or information relating to the national defense to a foreign government or its agents; (2) that she acted with the intent, or with reason to believe, that the documents were to be used to the injury of the United States or to the advantage of a foreign nation; and (3) that she acted willfully. *See* Brief of Bar Counsel, Tab D. The elements of her conviction for aiding and abetting the obtaining of national defense information are: (1) that she aided and abetted the taking, copying or obtaining of national defense documents; (2) that the national defense documents were taken, copied or obtained with the intent, or with reason to believe, that the information was being used to the injury of the United States or to the advantage of any foreign nation; and (3) that she acted willfully. *See id.*

Both the indictment and the jury instructions show that Respondent's purpose in obtaining the documents was charged in the disjunctive. She could have been found guilty by the jury regardless of whether her purpose was to harm the United States *or* to help another country. If the offense only involved the attempt to harm the United States, it might well involve moral turpitude *per se;* however, trying to help a foreign country might not. For example, a lawyer could be found guilty of violating these statutes even if the foreign country was a close ally, such as Canada or Great Britain, an even if the national defense information was provided free of any quid pro quo and for purely humanitarian purposes—such as, hypothetically, to help either of these countries rescue their citizens who were in mortal danger due to a terrorist threat. Under the least culpable defendant analogy, it is possible that such a misguided but well-intentioned lawyer could be convicted under either 18 U.S.C. § 793 or § 794. Such a conviction might not inherently involve moral turpitude.

While the majority opinion correctly points out, per *Gorin v. United States,* 312 U.S. 19, 61 S.Ct. 429, 85 L.Ed. 488 (1941), that a conviction for violating §§ 793 and 794 requires those prosecuted to have acted in "bad faith," the use of the term "bad faith" does not equate to evil purpose. In *United States v. Miller,* 874 F.2d 1255 (9th Cir.1989), the requirement of "bad faith" was more fully explained:

> In order to prove the offenses charged under 18 U.S.C. §§ 793(b) & 794(a), the government must show that [the defendant] intentionally performed the acts charged *and* that he did so with "intent or reason to believe that the information [delivered] is to be used to the injury of the United States, or to the advantage of any foreign government." Contrary to the suggestion of [the defendant], this showing is all that the Supreme Court required when it stated that a person may not be convicted under these statutes absent a showing of "bad faith." *See Gorin v. United States,* 312 U.S. 19, 27–28, 61 S.Ct. 429, 433–34, 85 L.Ed. 488 (1941).

*Id.* at 1277–78.

Thus, the contention of the defendant in *Miller* that the government should have been required to show that the defendant

acted with "bad faith," namely with the "purpose either to disobey or to disregard the law," was expressly rejected. *Id.* at 1277. In fact, a person can be convicted under these espionage statutes if a jury concludes that the person's belief was that his actions in disclosing information would in fact benefit the United States, if such belief was not objectively reasonable. *Id.* at 1279; *United States v. Smith,* 592 F.Supp. 424, 429–30 n. 2 (E.D.Va.1984), *vacated on other grounds,* 780 F.2d 1102 (4th Cir.1985) (en banc).

With regard to 18 U.S.C. § 793(b), it even allows the prosecution of individuals who can, in the normal course of their employment, lawfully possess such national defense information. This lawful possession becomes a criminal offense only if there is additional proof of an intent by the possessor of this information that it was to be used to the injury of the United States or to the advantage of any foreign nation. If this possession was solely under the second prong, *i.e.,* with intent to give advantage to a foreign nation, such conduct, while illegal, might well stem from humanitarian underpinnings and not involve moral turpitude. It is also significant that there is no requirement under § 793(b) that any national defense information actually be transmitted to a person or country not entitled to receive it. That activity, *i.e.,* the actual transmission of such national defense information, is prohibited by § 793(d), if the national defense information was lawfully obtained, and by § 793(e), if the acquisition of such information was by unauthorized means.

Based on a review of the elements of these offenses, it does not appear that they necessarily involve moral turpitude *per se.* Since there is an issue, we should err on the side of having an evidentiary hearing and developing the facts. *See Col-*

*son,* 412 A.2d at 1165 n. 10. It is my recommendation that this matter be directed to a Hearing Committee with directions to determine whether there is moral turpitude under the facts of this case, not only on the two espionage statutes but also to Respondent's conviction of 18 U.S.C. § 1001.

s/ Paul L. Knight
Paul L. Knight
dated; March 9, 2001