*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CM-1741

GRADY W. HAILSTOCK, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-6661-12)

(Hon. Ronna Lee Beck, Trial Judge)

(Submitted December 17, 2013                    Decided March 6, 2014)

*James Klein*, *Jaclyn S. Frankfurt* and *Lee R. Goebes*, Public Defender Service, were on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, *Shane Waller* and *Gilead I. Light*, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER and THOMPSON, *Associate Judges*, and SCHWELB, *Senior Judge*.

Opinion for the court by *Associate Judge* THOMPSON.

Opinion by *Senior Judge* SCHWELB concurring in the judgment at page 13.

THOMPSON, *Associate Judge*:  Following a bench trial, appellant Grady

Hailstock was convicted of one count of attempted misdemeanor sexual abuse

("MSA") and one count of assault. In this appeal, he contends that the government (1) failed to prove that he possessed the requisite mental state and (2) also failed to prove that he came dangerously close to completing the offense of MSA, and thus did not meet its burden of proof as to "attempt." In addition, he asserts that his simple assault and attempted MSA convictions merge and that one of the convictions therefore must be vacated. We affirm the judgment of the trial court but, agreeing with appellant's merger argument, remand for the trial court to vacate one of his convictions.

**I.**

The government presented the only evidence at appellant's trial. Complainant C.W., who was 17 at the time of the charged offenses, testified that appellant, who was a "very close family friend" of her grandfather and who had known C.W. since she was a child, frequently came to the house where she lived to "work[] on something in the house."[1] C.W. had a "family type of relationship" with appellant and "called him [her] uncle." On April 17, 2012, C.W. was ill and stayed home from school. She was upstairs lying in her mother's bed when

---

[1] Appellant was 57 years old at the time of trial.

appellant opened the bedroom door, walked into the bedroom, and shut and locked the door. Appellant then walked towards the bed and climbed onto it. When C.W. asked him what he was doing, appellant responded that he was going to "get down." C.W. began pushing him and said "no, no." Appellant then "grabbed [C.W.'s] robe" and in the process, "kind of touched [her] breast." C.W. "tried to get off the bed." At that point, appellant "stopped . . . [and] got down" and left the room, saying, "I guess I'll get back to work." C.W. was "shaking" and "nervous" and could see appellant still standing outside the room, looking through the doorway. When she left the room and walked by appellant, he "made a noise, like, 'ooh.'"

When C.W. went downstairs, her brother noticed that she had been crying. He asked her what was wrong and she told him what had happened. Thereafter, C.W.'s brother asked to speak with appellant outside. When the brother asked appellant what happened, appellant smirked and said that C.W. "wanted it." Later that day, Metropolitan Police Department Officer Cheryl Sentino responded to the report of a "disturbance" at C.W.'s residence. She encountered C.W. who was "teary-eyed, and looked like she had been crying, and upset" and who explained what had happened. As captured on a police videotape of appellant's post-arrest interrogation (and as summarized by the trial court), appellant told a detective that

"his intent was to have sexual intercourse, as that term is commonly understood, with [C.W.] if she consented."

In finding appellant guilty of the charged offenses, the trial court stated that appellant's "intentions, as indicated by his actions and his later statements, were to have sexual intercourse with [C.W.]" and that he "knew or should have known that he did not have consent to take these actions." The court found that appellant's "actions . . . were reasonably adapted to accomplishing the alleged misdemeanor sexual abuse, and he came dangerously close to committing the alleged misdemeanor sexual abuse[,]" and that "at the time when [appellant] attempted the sexual act named in the information[,] . . . he should have known that he was proceeding without the consent of the complaining witness."[2] The court further found that C.W. did not in any way provoke or induce appellant's sexual advances or "suggest to him that she was interested in any kind of sexual contact with him." The court found "beyond a reasonable doubt that [appellant] attempted to commit a

---

[2] The trial court reiterated and clarified its findings several times, both at the conclusion of the trial on October 9, 2012, and during the October 19, 2012, sentencing proceeding. Thus, for example, the court stated in addition that appellant "certainly intended to commit the sexual act, and he certainly had no reason for believing that he had the consent of the complaining witness." Appellant acknowledges that the court's "findings of fact and conclusions of law did not differ substantively between the two days[.]"

sexual act with [C.W.], the sexual act of his penis — contact between his penis and her vagina, when he should have known that she had no interest in that and that she wasn't consenting and it wasn't reasonable for him to think that she would consent." However, the court was "not able to find beyond a reasonable doubt" "that it was [appellant's] intention to have sexual intercourse with [C.W.] without her consent"; that he "intended to have intercourse . . . without her consent[,] that is, that he intended to force her to have intercourse[,]"; "that it was his intention . . . to proceed to have sex with her against her will"; "that it was his intention . . . to proceed [to commit the sexual act] whether or not she consented[,]"; or "that it was his intention from the beginning to engage in sex that was non-consen[s]ual," i.e., "[w]here there was affirmative rejection of the interest in sex."

## II.

The MSA statute prescribes a penalty for "[w]hoever engages in a sexual act or sexual contact with another person and who should have knowledge or reason to know that the act was committed without that other person's permission[.]" D.C. Code § 22-3006 (2012 Repl.). To obtain a valid conviction for MSA, the government must prove beyond a reasonable doubt that the accused

> (1) committed a sexual act or sexual contact; (2) intended to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; and (3) *knew or should have known* that he or she did not have the complainant's permission to engage in the sexual act or sexual contact.

*Nkop v. United States*, 945 A.2d 617, 619–20 (D.C. 2008) (italics added, internal quotation marks omitted); *see also Robles v. United States*, 50 A.3d 490, 493–94 (D.C. 2012) (explaining that the statute "requires proof that the defendant should have knowledge or *reason to know* that the act was committed without the other person's permission") (alterations and internal quotation marks omitted). As relevant to the charged offense here, a "sexual act" requires penetration of the anus or vulva. D.C. Code § 22-3001 (8). "[S]exual contact" refers to the "touching with any clothed or unclothed body part . . . of the genitalia . . . of any person with an intent to . . . arouse or gratify the sexual desire of any person." D.C. Code § 22-3001 (9).

In this case, appellant was charged by information with "attempt[ing] to engage in a sexual act or contact with C.W., that is, contact between [appellant's] penis and C.W.'s vagina, where [appellant] knew or had reason to know that the sexual act or contact was without C.W.'s permission." To prove an attempted offense, "the government must prove the defendant (1) intended to commit the crime, and (2) committed an overt act towards the completion of the crime that (3)

came within dangerous proximity of completing the crime." *Nkop*, 945 A.2d at 620 (internal quotation marks omitted).

**III.**

Appellant contends that to prove the requisite mens rea for attempted MSA, the government was required to prove both that he intended sexual contact or a sexual act with C.W. and "that he meant to do so without regard to [her] lack of consent." He argues that because the trial court was unable to find beyond a reasonable doubt that he had that mental state, his conviction for attempted MSA must be reversed.

We are not persuaded by this argument. First, we do not read the court's findings as indicating that the court could not find beyond a reasonable doubt that appellant intended sexual *contact* (i.e., as charged in this case, penis-to-vagina contact) without regard to C.W.'s consent. We recognize that, at least at one point, the court was not careful to distinguish the terms "sexual act" and "sexual

contact"[3] even though, as defined by § 22-3001 (8), the former, but not the latter, requires penetration of the vagina by the penis. But each time that the court described what it was unable to find beyond a reasonable doubt, it used the terms "sexual intercourse," "intercourse," "sex" or "the sexual act" to describe the act that it could not find appellant intended even if C.W. would not consent.[4] Because, as we read the transcript, the court did not decline to find that appellant intended to have penis-to-vagina sexual *contact* with C.W. without regard to her consent, we reject appellant's argument that the trial court findings preclude a holding that he had the requisite mental state.

Further, even assuming that appellant is correct that the trial court was unable to find beyond a reasonable doubt that he intended to have penis-to-vagina sexual *contact* with C.W. regardless of her consent, we agree with the government that the evidence and the court's factual findings nevertheless were sufficient to support appellant's conviction of attempted MSA. An "attempted" offense

---

[3] We are referring to the court's statement that it found "beyond a reasonable doubt that [appellant] attempted to commit a sexual act with [C.W.], *the sexual act* of . . . *contact between his penis and her vagina*" (italics added).

[4] Appellant appears to recognize this, arguing that "the government did not prove that [appellant] intended to go through with the planned *sexual intercourse* without regard to C.W.'s consent[.]" This interpretation is consistent with the court's summary that appellant told a detective that "his intent was to have sexual intercourse, as that term is commonly understood, with [C.W.] if she consented."

"requires an intent to commit the crime being attempted." *Buchanan v. United States*, 32 A.3d 990, 1002 (D.C. 2011) (Ruiz, J., concurring); *see also Nkop*, 945 A.2d at 620 (same); *Brawner v. United States*, 979 A.2d 1191, 1194 (D.C. 2009) (the government was required to prove that the defendant "intend[ed] to commit the underlying offense"). The elements of MSA, the crime appellant was convicted of attempting, are commission of a sexual act or sexual contact, with the intent to gratify the defendant's sexual desire, when the defendant knew or should have known that he did not have the complainant's permission to engage in the sexual act or sexual contact. Therefore, the specific intent required for attempted MSA is the intent to commit a sexual act or sexual contact in order to gratify the defendant's sexual desire, when the defendant either knew or should have known that he did not have the complainant's permission to engage in the sexual act or sexual contact.

Here, the trial court found — and the evidence supports its finding — that appellant had precisely that intent.[5] The court found that appellant's "intentions . . . were to have sexual intercourse with [C.W.]" and that he "attempted the sexual

---

[5] That appellant intended to have sexual contact with C.W. for his own sexual gratification was not in dispute; appellant admitted as much to the police. Further, appellant does not challenge the court's conclusion that he should have known that C.W. would not consent to sexual contact or a sexual act with appellant.

act named in the information" ("a sexual act or contact with C.W., that is, contact between [his] penis and C.W.'s vagina") "at [a] time when . . . he should have known" that he did not have "the consent" of C.W. Appellant's claim (which the trial court was unable to reject beyond a reasonable doubt) was not that he lacked a reason to know that C.W. would not consent, but that he intended to complete the sexual act only if C.W. did consent. We think this claim must be interpreted to mean that appellant intended to have sex with C.W. only if he perceived that C.W. consented (or, stated differently and using the trial court's expression, appellant intended to have sex with C.W. unless he perceived C.W.'s "affirmative rejection of the interest in sex"). So understood, appellant's not-discredited claim was not a bar to conviction because, to repeat, what was required to convict him of the offense of attempted MSA was that he took the requisite overt steps at a time when he *should have known* that he did not have C.W.'s consent for the acts he contemplated.

Appellant's alternative argument is that even if the mens rea for attempted MSA was satisfied, his conviction cannot stand because the trial court could not reasonably find that he came "dangerously close" to completing the sexual act or sexual contact. He asserts that because his intent (which, again, the trial court could not discredit beyond a reasonable doubt) was to proceed to completion only

if C.W. consented, "the completed crime of MSA was never going to occur" — i.e., there was no "close proximity of completion[.]" *Nkop*, 945 A.2d at 620. We reject this argument as well.

The test of "dangerous proximity" of completing a crime is met where, "except for some interference," a defendant's overt acts "would have resulted in commission of the completed crime," *Evans v. United States*, 779 A.2d 891, 894 (D.C. 2001), or where the defendant has taken a "substantial step toward commission of the crime," *In re Johnson*, 48 A.3d 170, 173 n.8 (D.C. 2012) (citing *In re Squillacote*, 790 A.2d 514, 521 (D.C. 2002)). The evidence in this case satisfied these tests. Appellant entered the bedroom where C.W. was resting and got onto the bed with her. Even after C.W. said "no" to appellant's expressed intent to "get down" with her and even after she pushed him away, appellant continued in his efforts, pulling on her robe and touching her breast in the process. These actions behind a closed and locked door constituted substantial steps toward the sexual contact that appellant intended.[6] In addition, viewed in the light most

---

[6] This court has observed that "[t]he line between preparation and attempt is often indistinct, especially in the area of attempted sexual abuse." *In re Doe*, 855 A.2d 1100, 1107 n.12 (D.C. 2004) (citing the following cases in which courts "found criminal attempts to commit sexual assaults" on the basis of conduct that did not progress as far as even touching the victim, but instead involved only the defendant's traveling to an agreed-upon location with the intent to engage in sexual

(continued…)

favorable to the government, the evidence was that it was only upon the interference of C.W.'s continued active resistance that appellant desisted in his efforts to have sexual contact with her. Contrary to appellant's argument, C.W.'s active resistance satisfied the requirement that the interference be from an external source or "external to the defendant," rather than the defendant's "own intent." *See Davis v. United States*, 873 A.2d 1101, 1107 (D.C. 2005) (citing defendant's daughter's act of "fle[eing] instead of submitting to his request" after he "exposed himself to her and asked her to rub his penis" as the interference that kept defendant's conduct from resulting in a completed crime).

---

(…continued)

intercourse with a child or with an individual whom the defendant believed to be a child: *State v. Townsend*, 20 P.3d 1027 (Wash. Ct. App. 2001), *aff'd*, 57 P.3d 255 (Wash. 2002) (en banc); *Dennard v. State*, 534 S.E.2d 182 (Ga. 2000); *People v. Scott*, 740 N.E.2d 1201 (Ill. 2000); *People v. Patterson*, 734 N.E.2d 462, 470 (Ill. App. Ct. 2000); *Van Bell v. State*, 775 P.2d 1273 (Nev. 1989)).

Appellant likens his actions to the non-criminal actions of a law firm associate who approaches a law firm partner at a party, touches her arm and makes an "unrealistic request[] for sexual interaction[,]" unreasonably hoping that she will consent. This hypothetical is not analogous to the facts here because appellant's actions on the bed with C.W. and behind a closed and locked door went beyond a mere unreasonable solicitation of consent. Distinguishing appellant's hypothetical, one might say that even if there is no crime entailed in asking, that does not mean there is no crime entailed in trying.

## IV.

As appellant asserts, "simple assault is a lesser-included offense of attempted misdemeanor sexual abuse[,]" *Nkop*, 945 A.2d at 621, and a defendant may not stand convicted of both crimes for the same behavior.  Accordingly, we agree with appellant (and the government concedes) that we must remand to the trial court for it to vacate one of appellant's convictions.

***

For the foregoing reasons, we conclude that the trial court did not err in convicting appellant of attempted MSA.  We affirm the judgment of conviction, but remand for the court to vacate either that conviction or the simple assault conviction.

*So ordered.*

SCHWELB, *Senior Judge*, concurring in the judgment:  I concur in the judgment *dubitante*.  Although Hailstock obviously did not intend to have sexual intercourse with the complaining witness if she turned him down, and although he departed ignominiously, soon uttering preposterous boasts about his implied

supposed prowess after she did refuse him, I am (barely) prepared to join my colleagues in affirming the MSA conviction because under all of the circumstances, Hailstock's earlier actions, including locking the door and assaulting the victim on the bed, were arguably sufficient under the statute. See, also, maj. op. at 11 note 6, and authorities there cited. I also vote to affirm the assault conviction.