Jacobi GRIFFIN, Appellant,

v.

UNITED STATES, Appellee.

No. 00–CF–1037.

District of Columbia Court of Appeals.

Submitted March 23, 2004.
Decided May 27, 2004.

Ferris R. Bond, Washington, DC, appointed by the court, was on the brief for appellant.

Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman, Howard Sklamberg, and Rikki D. McCoy, Assistant United States Attorneys, were on the brief for appellee.

Before WAGNER, Chief Judge, STEADMAN, Associate Judge, and BELSON, Senior Judge.

BELSON, Senior Judge:

Appellant, Jacobi Griffin, was convicted by a jury of possession with intent to distribute cocaine, possession of marijuana, and two counts of introducing contraband (marijuana and cocaine) into a penal institution.[1] He now appeals his conviction of all counts.

---

1. These convictions were of violations of D.C.Code § 33–541(a)(1) (2001), recodified at

## I.

The four charges all arose from an incident that occurred on December 13, 1999, at Community Correctional Facility Number 4, a halfway house located in Washington, D.C. Appellant was an inmate there on the day the violations occurred. He and the other inmates who lived there were allowed to leave the facility during daytime hours, but were required to return in the early evening. When appellant returned to the facility on the day in question, a corrections officer observed that he was acting in a peculiar manner, and conducted a pat-down search. The pat-down search did not reveal anything, so the officer escorted appellant into a restroom, where appellant was told to remove articles of clothing, including his pants. When appellant removed his pants, the officer saw that he was wearing a second pair of pants, from which the officer recovered a considerable quantity of cocaine. The cocaine was packed in separate bags in a manner that indicated intent to distribute. The search also uncovered a small amount of marijuana which, by its quantity and packaging, appeared to be for personal use.

## II.

Appellant raises four issues on appeal. We consider each of them and find appellant's arguments unpersuasive.

### A.

Appellant moved before trial to suppress the evidence uncovered during the search (the cocaine and marijuana) on the ground that the search constituted an unreason-

D.C.Code § 48–904.01(a)(1) (2001); D.C.Code § 33–541(d) (2001), recodified at D.C.Code § 48–904.01(d) (2001); and D.C.Code § 22–2603 (2001).

able intrusion upon his rights under the Fourth Amendment. The corrections officer who conducted the search testified during the suppression hearing that appellant was searched because there had been a prior seizure of contraband from appellant, because of the peculiar manner in which he was acting upon his return to the facility, and because there had been a seizure of contraband from another inmate earlier that day. The trial court credited this testimony and found that in light of all of the surrounding circumstances the search was reasonable.

■ Our scope of review of a denial of a motion to suppress evidence is limited. *Harris v. United States*, 738 A.2d 269, 274 (D.C.1999). We give considerable deference to the fact-finder's ability to weigh the evidence, determine witness credibility and draw reasonable inferences therefrom, *Mitchell v. United States*, 683 A.2d 111, 114 (D.C.1996); *Dickerson v. United States*, 650 A.2d 680, 683 (D.C.1994), but we review the trial court's ultimate conclusions of law *de novo*. *Davis v. United States*, 759 A.2d 665, 669 (D.C.2000).

■ The record before us reflects that appellant was an inmate at the halfway house. We have consistently held that halfway houses are penal institutions for the purposes of D.C.Code § 22–2601. *Demus v. United States*, 710 A.2d 858, 861 (D.C.1998) (appendix); *Gonzalez v. United States*, 498 A.2d 1172, 1174 (D.C.1985); *Mundine v. United States*, 431 A.2d 16, 17 (D.C.1981). Both D.C.Code § 22–2601 and D.C.Code § 22–2603 deal with prisoner misconduct and use the same terminology, *i.e.,* "penal institution." [2] We now hold

2. *Compare* D.C.Code § 22–2601(a)(1) ("No person shall escape or attempt to escape from ... [a] penal institution or facility in which that person is confined pursuant to an order issued by a court, judge, or commissioner of

that for purposes of D.C.Code § 22–2603 a halfway house is a penal institution, and that inmates in halfway houses are entitled to no greater a level of Fourth Amendment protection than are inmates in prisons, jails and other penal institutions. *See Griffin v. Wisconsin,* 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1986). (Halfway houses are one option on continuum of possible punishments ranging from solitary confinement to a few hours of community service.)

The Supreme Court in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) considered the right of prisoners, including pretrial detainees, to Fourth Amendment protection from unreasonable searches, and held that "the Fourth Amendment prohibits only unreasonable searches, and under the circumstances, we do not believe these [searches that include visual inspection of body cavities as part of strip search conducted after every contact visit with a person from outside the institution] are unreasonable." *Id.* at 558, 99 S.Ct. 1861. In allowing body cavity searches upon a showing of less than probable cause, the Court stated that the assessment of reasonableness under the Fourth Amendment "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, and the place where it is conducted." *Id.* at 559, 99 S.Ct. 1861. A basic proposition guiding the Supreme Court in *Bell* was that "[l]aw-ful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system" *Id.* at 545–46, 99 S.Ct. 1861 (citation omitted).[3]

■ Turning to the search challenged by appellant on the motion to suppress, the evidence introduced at the hearing established that appellant had been caught once before at the halfway house with contraband, and that there had been an earlier contraband incident with a different inmate the day appellant was searched. Appellant was acting "peculiar[ly] that day" and was avoiding eye contact with the corrections officer, which suggested the need for a thorough search. Furthermore, the search itself was conducted in a reasonable manner; appellant was taken into a restroom, which afforded some degree of privacy. Additionally, the partial strip search was halted when the drugs were recovered, and no body-cavity search was conducted. Based on these facts, the trial court determined that the search was reasonable. We are satisfied that the record supports this conclusion.

■ As a separate argument for suppression, appellant contends that the strip search was conducted in violation of a halfway house operating policy that directed that strip searches be conducted only in the presence of a supervisory corrections official. The government responds that in fact a senior official had given the searching officer discretion to conduct a strip search whenever necessary, but argues

---

the District of Columbia ...") *with* D.C.Code § 22–2603 ("Any person ... who introduces or attempts to introduce into or upon the grounds of any penal institution of the District of Columbia ... any narcotic drug, weapon, or any other contraband article or thing, or any contraband letter or message intended to be received by an inmate thereof, shall be guilty of a felony.").

3. *Bell* dealt with the rights of pretrial detainees as well as other prisoners regarding body cavity searches. It is not clear from the record here whether appellant was a pretrial detainee. Even if, as appellant's brief suggests, he was in pretrial status, *Bell* applies.

that in any event the halfway house operating policy does not define the reach of the Fourth Amendment. We agree that it does not. *See United States v. Robinson*, 414 U.S. 218, 221–23 n. 2, 94 S.Ct. 494, 38 L.Ed.2d 456 (1973) (Presence or absence of a police regulation requiring a search of person whenever person is arrested and is to be transported to a police facility for booking is not determinative of issue of whether such search is contrary to a person's Fourth Amendment rights.); *Gustafson v. Florida*, 414 U.S. 260, 265, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973) (same); *cf. Sandin v. Conner* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (state prison regulations generally do not create liberty interest protected by Due Process Clause unless they confer interest in freedom from restraint which imposes atypical and significant hardship on inmate in relation to ordinary incidents of prison life).

## B.

■ Appellant also argues that the government failed to prove an essential element of the alleged violation of D.C.Code § 22–2603. That provision makes illegal (1) the introduction or attempted introduction of any narcotic drug, weapon, or other contraband into or upon the grounds of a D.C. penal institution; (2) without authorization "by law, or by the Mayor of the District of Columbia, or by the Director of the Department of Corrections of the District of Columbia." Appellant submits that the government failed to present evidence upon which the jury could find beyond a reasonable doubt that the alleged introduction of contraband was made without the authorization of the law, the Mayor, or the Director of the D.C. Department of Corrections, as neither official testified.

The government contends that the testimony it elicited from a corrections officer formed a foundation upon which the jury could reasonably conclude that appellant did not have authorization to introduce the contraband into the facility. Specifically, the corrections officer testified that the appellant was hiding the drugs within multiple plastic bags in the second or inner layer of pants that he wore. He also testified that in his many years of working at the facility, no inmate had ever been given authorization to bring contraband into the facility. The government argues that this testimony together with the well-known fact that marijuana and cocaine are illegal substances and the evidence that appellant concealed the substances in an inner layer of pants, considered in the light most favorable to the government, was sufficient to permit the jury to find that appellant did not have authorization to bring the drugs into the facility. *See Pearsall v. United States*, 812 A.2d 953, 963 (D.C.2002).

The government informed the trial court during a bench conference that it was relying on these inferences to establish that element of its case, and also called the court's attention to a decision of the United States Court of Appeals for the Fifth Circuit, *United States v. York*, 578 F.2d 1036 (5th Cir.1978), that addressed a similar federal statute in an analogous context and held that it was permissible to use similar inferences to show that the introduction of contraband into a penal institution was effected without authorization of the law or the specified official. "The prosecution did not adduce testimony of the warden at [the penal institution] that he neither knew of nor consented to [the introduction of marijuana to the facility], but his lack of knowledge or consent could reasonably have been inferred beyond a reasonable doubt from other evidence." *Id.* at 1041.

We agree with the approach of the Fifth Circuit. We reject appellant's argument that the testimony of the Mayor and the Director was necessary to establish that element of the charged offense, and conclude that the evidence was sufficient to support the jury's finding of guilt.

### C.

 Appellant also submits that the trial court erred by mentioning, but not defining, the term "attempt" during jury instructions. Appellant's trial counsel initially objected to the inclusion of the term, but withdrew the objection upon being informed that D.C.Code § 22–2603 used the term "attempt" in defining the charged offense. Accordingly, because there was no remaining objection to the trial court's jury instructions, our review is limited to a determination of whether any alleged deficiencies in the instructions constituted plain error. *Guishard v. United States,* 669 A.2d 1306, 1315 n. 16 (D.C.1995); *Curington v. United States* 621 A.2d 819, 821–22 (D.C.1993).

 Appellant's trial counsel did not request that the court give a special jury instruction on the term "attempt." We have held that "[a] trial court is under no obligation to define particular terms in its jury instructions . . . ." *Guishard, supra,* 669 A.2d at 1315. Furthermore, the word "attempt" is a commonly used word and its meaning is understandable. We have held that a "court need not give an instruction defining a term unless it has a technical legal meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its import in relation to the factual circumstances." *Wilson v. United States,* 785 A.2d 321, 328 (D.C.2001) (quoting *Compton v. State,* 931 P.2d 936, 941 (Wyo.1997)).

We have also considered appellant's other arguments concerning the trial court's jury instructions and find them unpersuasive. We are satisfied that the trial court's jury instruction did not constitute error, much less plain error.

In view of the foregoing the judgment of the trial court is

*Affirmed.*