**Terrance M. HINES, Appellant**

v.

**UNITED STATES, Appellee**

**No. 03–CF–265, 03–CF–317.**

District of Columbia Court of Appeals.

Submitted Dec. 3, 2004.
Decided Jan. 19, 2006.

Reuben B. Collins, II, Washington, appointed by the court, was on the brief for appellant.

Kenneth L. Wainstein, United States Attorney, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and Thomas J. Tourish, Jr., Wanda J. Dixon, and Katherine M. Kelly, Assistant United States Attorneys, were on the brief for appellee.

1.  The jury could not agree on the charge of assault with a dangerous weapon, and the court declared a mistrial as to that case.

2.  Although there are two consolidated appeals before us, appellant challenges only his con-

Before TERRY, Associate Judge, and BELSON and NEBEKER, Senior Judges.

TERRY, Associate Judge:

Appellant was charged with one count of assault with a dangerous weapon after assaulting and seriously injuring his former roommate.  Appellant failed to appear in court on July 31, 2000, for a preliminary hearing, and shortly thereafter he was arrested and charged with one count of violating the District of Columbia Bail Reform Act ("BRA"), D.C.Code § 23–1327(a) (2001).  The court then ordered him to be placed in a halfway house.  On October 3, 2000, he left the halfway house and failed to return as required.  This failure led to a new charge of escape, in violation of D.C.Code § 22–2601(a)(1) (2001).  All three cases were consolidated for trial.  A jury later found him guilty of both escape and the BRA violation.[1]  From those convictions he filed timely notices of appeal.[2]

I

At trial the parties stipulated to the facts establishing the basis for the escape charge, as follows:

On September 20, 2000, Mr. Hines received a work release order indicating that he was to go to a halfway house. The work order allowed him to leave the halfway house for VA medical treatment.  On September 26, 2000, Mr. Hines signed the rules and regulations for the halfway house, which stated that he would not escape or abscond, or assist others in doing so.

viction of escape (No. 03–CF–265).  He presents no argument pertaining to the BRA appeal (No. 03–CF–317). Our summary of the evidence will therefore include only those facts relevant to the escape charge.

On October 3, 2000, Mr. Hines signed out of the halfway house at 7:00 a.m. to go to court. The rules stated that he had to return by 6:00 p.m. that evening. When he did not return at the appointed time, the halfway house staff wrote "abscondence" on the sign-out sheet.

An affidavit in support of Mr. Hines's arrest for escape and failure to return to the halfway house was obtained by the staff the following day.[3]

In addition to the stipulation, the government introduced a number of documents into evidence concerning appellant's placement in the halfway house. These included the work release order; the rules and regulations of the halfway house, which appellant signed; the sign-in/sign-out sheet for October 3, 2000; and the affidavit in support of appellant's arrest warrant.

According to the affidavit, appellant was conditionally released by a judicial officer of the Superior Court on September 20, 2000. The release order required him to return to custody each day after work, schooling, or other limited activities. Appellant was placed in CCC No. 4, a halfway house,[4] on September 26 to fulfill the terms of the release order. On October 3 appellant signed out of the halfway house at 7:00 a.m. to attend court. His scheduled return time was 6:30 p.m.[5] The affidavit further stated that appellant "did not return as scheduled and was placed in escape status on October 3, 2000," and that attempts to locate him "proved negative." As of the date of the affidavit (October 3), appellant's whereabouts were unknown.

Appellant did not testify or present any evidence.

## II

Appellant argues that the government's evidence was "legally insufficient to support a verdict of guilty beyond a reasonable doubt on the charge of escape" because the government failed to establish that he possessed the requisite intent under the escape statute. This contention is without merit.

Our standard of review is well established. When this court considers a claim of evidentiary insufficiency, it must view the evidence "in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact ...." *Gibson v. United States,* 792 A.2d 1059, 1065 (D.C.), *cert. denied,* 536 U.S. 972, 122 S.Ct. 2692, 153 L.Ed.2d 861 (2002) (quoting *Curry v. United States,* 520 A.2d 255, 263 (D.C. 1987)). We draw no distinctions between direct and circumstantial evidence, and "the government is not required to negate every possible inference of innocence." *Jones v. United States,* 625 A.2d 281, 288 (D.C.1993). Evidence will be held insufficient to support a conviction only if there is "no evidence upon which a reasonable mind could infer guilt." *Patterson v. United States,* 479 A.2d 335, 338 (D.C.1984) (citation omitted).

Under D.C.Code § 22–2601(a)(1), it is unlawful for a person to "escape or attempt to escape from ... any penal institution or facility in which that person is confined pursuant to an order issued by a court, judge, or commissioner of the Dis-

---

**3.** This condensed and slightly edited summary is based on the stipulation which the prosecutor read into the record.

**4.** "CCC" stands for Community Correctional Center.

**5.** The stipulation said that appellant was supposed to return at 6:00 p.m. (not 6:30), but because he did not return at all that night, this discrepancy is immaterial.

trict of Columbia ...." A halfway house is considered a penal institution for purposes of this statute. *Demus v. United States,* 710 A.2d 858, 861 (D.C.1998); *Gonzalez v. United States,* 498 A.2d 1172, 1174 (D.C. 1985). Thus, to establish that appellant escaped, the statute required the government to prove that he was confined to a halfway house and that he escaped or attempted to escape from that facility. "Escape" means knowingly or deliberately leaving physical confinement, or failing to return to it, without permission. *See United States v. Bailey,* 444 U.S. 394, 408, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980); *Thurston v. United States,* 779 A.2d 260, 262 n. 4 (D.C.2001). It is undisputed that appellant was confined to a halfway house pursuant to a court order; hence the only issue here is whether he "escaped" within the meaning of D.C.Code § 22–2601(a)(1).

When construing the District of Columbia's escape statute, this court has looked to interpretations of its federal counterpart, 18 U.S.C. § 751(a) (2000).[6] *Thurston,* 779 A.2d at 264. In *Bailey* the United States Supreme Court held that "the prosecution fulfills its burden under § 751(a) if it demonstrates that an escapee knew his actions would result in his leaving physical confinement without permission." 444 U.S. at 408, 100 S.Ct. 624. This court explicitly adopted the Supreme Court's interpretation of "escape" in *Thurston,* 779 A.2d at 264. We have also made clear that "a person 'escapes' when he lawfully leaves a halfway house *but fails to return on time." Id.* at 262 n. 4 (citation omitted; emphasis added). That is precisely what occurred in this case. Appellant signed out of the halfway house at

7:00 a.m. on October 3, 2000, and was on notice that he was to return by 6:30 p.m. that same day. According to the affidavit in support of appellant's arrest warrant, he failed to return at the appointed time. A reasonable fact-finder could conclude that this failure constituted an escape of the kind identified in *Thurston.*

Appellant argues nonetheless that there was a dearth of evidence regarding his intent to leave the halfway house without permission. He points to the fact that he "had absolutely no apprehension about coming to court for scheduled court dates prior to the alleged date and subsequent to that date as well." Had he "displayed a pattern of deliberately missing court dates," appellant contends, "it would be more convincing that [he] had the propensity to escape." He appears to be arguing that his willingness to appear at judicial proceedings refutes any assertion that he had a conscious objective to "escape" from the system when he failed to return to the halfway house on October 3. This argument is faulty both in its logic and in its characterization of the intent that is necessary to support a conviction of escape.

■ Both the Supreme Court and this court have rejected the argument—which appellant makes repeatedly throughout his brief—that the government must show that a defendant acted "with an intent to avoid confinement." *See Bailey,* 444 U.S. at 408, 100 S.Ct. 624; *Thurston,* 779 A.2d at 264. Simply put, the government need not prove that the defendant "acted with the purpose—that is, the conscious objective—of leaving the [penal institution] without authorization." *Bailey,* 444 U.S.

**6.** 18 U.S.C. § 751(a) provides, in pertinent part:

Whoever escapes or attempts to escape from ... any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by

virtue of any process issued under the laws of the United States by any court, judge or commissioner ... shall ... be fined under this title or imprisoned not more than five years, or both ....

at 408, 100 S.Ct. 624. All that must be shown is that "the escapee knew his actions would result in his leaving physical confinement without permission." *Id.* In the present case, there was ample evidence from which a jury could conclude that appellant knew his failure to return to the halfway house on time would violate the law. *See Thurston,* 779 A.2d at 262 n. 4.

The evidence established that, upon being confined in the halfway house on September 26, appellant signed a document outlining the rules and regulations of that halfway house. That document explicitly stated, among other things, that he "must be legally signed out to depart this facility" and that he "must not escape/abscond or assist others in doing so." It also said that if appellant violated any of the rules, he would be "appropriately sanctioned" for his actions. Furthermore, appellant signed out of the halfway house on three occasions prior to October 3. He was due back on each of those days—September 27, September 28, and October 2—at 6:30 p.m. and did, in fact, return as required. Each time he signed a sheet evidencing his return, and a staff member on each occasion witnessed and verified his signature.

From all of this evidence, a reasonable fact-finder could infer that appellant knew he had to return to the halfway house at a designated hour, and that his failure to do so would result in appropriate sanctions. He was aware of the rules governing his placement in the halfway house, and had in fact observed those rules on three occasions before his failure to return on October 3. We hold that this evidence was sufficient evidence to support appellant's conviction of escape.

### III

In the appeal from appellant's conviction of escape (No. 03–CF–265), the judgment is affirmed. In the Bail Reform Act case (No. 03–CF–317), the appeal is dismissed as abandoned; see note 2, *supra.*

*So ordered.*