**Anthony N. BRAWNER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 06–CF–142.**

District of Columbia Court of Appeals.

Argued March 18, 2008.

Decided Sept. 3, 2009.

Jaclyn S. Frankfurt, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Elizabeth H. Danello, Assistant United States Attorney, with whom Jeffrey A Taylor, United States Attorney at the time the brief was filed, Roy McLeese, III, and John Einstman, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, and GLICKMAN and KRAMER, Associate Judges.

KRAMER, Associate Judge:

Appellant Anthony Brawner was convicted of escape under D.C.Code § 22–2601(a)(1) (2001) for attempting to escape from the District of Columbia Jail. At trial, he argued that the government had not met its burden of demonstrating that he intended to escape when he engaged in unauthorized movement within the jail while wearing contraband civilian clothing. On appeal, he argues that the trial court's failure to instruct the jury that the government was required to prove his intent to leave the jail warrants reversal. He also argues that the trial court erred in its jury instructions by improperly expanding the grounds on which the jury could convict appellant, constructively amending the indictment and therefore requiring reversal. We agree.

## I. Factual Background

At trial the government argued that on May 17, 2004, appellant attempted to escape from the District of Columbia Jail.[1] On that date he was being held without bond pending trial. Since he was an inmate with some custodial duties, he was permitted to leave his unit, South Three, to empty the trash in a bin just outside the unit door. The guard who let him out, Corporal Spence, lost sight of appellant, waited until he was relieved in the guard control room (the "bubble"), and went in search of him. Spence found appellant, in the custody of several guards, in the Receiving and Discharge area on the ground floor. In the ten minutes between the time he lost sight of appellant and the time he found him, appellant had changed into civilian clothes, left the third floor, and fled from Department of Corrections officers. His orange jumpsuit, the only clothing he was permitted to wear, was found on the first floor, balled up in a stairwell. When Spence found appellant again, appellant was wearing civilian clothes and attempt-

---

1. D.C.Code § 22–2601(a)(1) (2001) criminalizes both successful and attempted escapes from penal institutions.

ing to follow two attorneys out of a secure location on the second floor. When he was asked for some identification, appellant indicated that he had lost it and that he was an employee in the infirmary. When a Department of Corrections officer tried to escort him back to the infirmary appellant fled, running upstairs, eluding the grasp of another guard, and heading toward the infirmary doors. An alert guard had radioed to the infirmary control bubble and told the guards not to open the doors. Appellant was apprehended and brought to the Receiving and Discharge area. One corrections officer testified that if appellant had been able to get through the infirmary doors, he would have had access to an elevator and a stairway that led to the ground floor and the staff entrance. Had he made it to the staff entrance, he would still have had to get through an officer-controlled door in order to exit the jail.

### I. Intent as an Element of Attempted Escape

Appellant's indictment read: "On or about May 17, 2004, within the District of Columbia, Anthony Brawner, did escape from a penal institution and facility in which he was confined pursuant to an order issued by a court, magistrate judge, or commissioner of the District of Columbia. (Escape (From Institution)) in violation of 22 D.C.Code Section 2601(a)(1) (2001)."

The statute under which appellant was indicted reads:

(a) No person shall escape or attempt to escape from:

(1) Any penal institution or facility in which that person is confined pursuant to any order issued by a court, judge, or commissioner of the District of Columbia.

D.C.Code § 22–2601(a)(1) (2001).

Because appellant was apprehended within the jail, as opposed to outside the facility, the government proceeded on an attempted escape theory. As is clear from the wording of the statute, a person violates the statute when he or she escapes or attempts to escape. The defense's theory of the case was that appellant lacked the intent to escape and so could not be convicted of attempted escape. The appellant provided the following proposed jury instruction: "The defense asserted in this case is that Mr. Brawner did not intend to leave the D.C. Jail on May 17, 2004. If you believe that the government has not proven beyond a reasonable doubt that Mr. Brawner intended to leave the jail on May 17, 2004, you must find Mr. Brawner not guilty." This instruction and other proposed changes that would have injected intent as an element of the crime charged were rejected as being incorrect statements of the law. In denying these requests, the trial court relied on this court's holding in *Thurston v. United States,* 779 A.2d 260, 264 (D.C.2001), where we held that there is nothing in either the language of the statute or in the legislative history that requires the government to prove that a defendant on trial for a violation of § 22–2601(a)(1) acted with the intent to avoid further confinement. That case, however, involved a defendant who failed to return to his halfway house, making his escape a completed escape. This conclusion was reaffirmed in *Hines v. United States,* 890 A.2d 686 (D.C.2006), as being in accord with the Supreme Court's holding in *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), that "[a]ll that must be shown [in such cases] is that 'the escapee knew his actions would result in his leaving physical confinement without permission.'" *Hines, supra,* 890 A.2d at 690 (quoting *Bailey, supra,* 444 U.S. at 408, 100 S.Ct. 624). In both *Thurston* and *Hines,* however, the defendants failed to

return to their halfway houses, making their crimes completed escapes. Likewise, *Bailey* involved a successful completed escape.

■ This case, however, does not involve a completed escape. It involves an attempted escape, and we agree with appellant that (1) attempted escape cases are distinguishable from completed escape cases, even though they fall under the same statute, and that (2) attempted escape, like other inchoate offenses, requires the mental state of intending to commit the underlying offense. Indeed, the Supreme Court recognized in *Bailey* that "[i]n certain narrow classes of crimes, ... heightened culpability has been thought to merit special attention.... [One] such example is the law of inchoate offenses such as attempt and conspiracy, where a heightened mental state separates criminality itself from otherwise innocuous behavior." 444 U.S. at 405, 100 S.Ct. 624 (citing the Model Penal Code § 2.02, cmt. at 125 (Tentative Draft No. 4, 1955)). Accordingly, in a trial for attempted escape, such as this one, we agree that the government must prove what the defendant was attempting to do, and, therefore, must prove intent to escape.

■ While the jury can be inferred to understand that "attempt" requires an intent to complete an offense, *see Griffin v. United States,* 850 A.2d 313, 318 (D.C. 2004) (applying to the term "attempt" a prior holding that a "court need not give an instruction defining a term unless it has a technical legal meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its import in relation to the factual circumstances") (quoting *Wilson v. United States,* 785 A.2d 321, 328 (D.C.2001)), where, as here, the theory of the defense was lack of intent, the defense was entitled to a more specific instruction, and the court's refusal

to give that instruction was reversible error in its own right. As explained below, however, this error was further compounded by the trial court's constructive amendment of appellant's indictment.

## II. Constructive Amendment

Appellant also argues that the trial court gave a defective jury instruction that, besides misinforming the jury of the applicable legal principles, had the effect of constructively amending his indictment to include a charge under D.C.Code § 22–2601(a)(2). We agree.

■ Constructive amendment occurs when there has been "a *broadening* [of] the possible bases for conviction." *United States v. Miller,* 471 U.S. 130, 144, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985); *Wooley v. United States,* 697 A.2d 777, 784 (D.C. 1997). Specifically, appellant argues that the jury instructions improperly expanded the basis for conviction by including language relevant to an uncharged portion of the escape statute. Appellant correctly notes that the escape statute, D.C.Code § 22–2601, prohibits two kinds of escape: escape from an institution or facility in which a person is confined, under § 22–2601(a)(1), and escape from the lawful custody of an officer, under § 22–2601(a)(2). Appellant was charged under the first subsection, not the latter.

■ Jury Instruction 4.99A reflects this distinction, containing comments indicating that the definition of "escape" should be inserted or omitted depending on the facts alleged in the case. Criminal Jury Instructions for the District of Columbia No. 4.99A, at cmt. (4th rev. ed. 2002) (citing *Mack v. United States,* 772 A.2d 813 (D.C. 2001)). However, in this case, the trial court instructed the jury that it could convict appellant if it found either that he was (a) fleeing or departing from a penal insti-

tution or facility, or (b) fleeing or departing from lawful custody, even though he was indicted under the former subsection only. This impropriety was further compounded by the additional instruction that "custody" is not limited to confinement in a prison or jail. Thus, although appellant was charged only with a violation of D.C.Code § 22–2601(a)(1), the jury instruction included language appropriate to both subsections of the escape statute. Because appellant was charged only under subsection (a)(1), instructing the jury that it could convict him under either (a)(1) or (a)(2) improperly "*broaden[ed]* the possible bases for conviction," *Miller, supra,* 471 U.S. at 144, 105 S.Ct. 1811, and constructively amended his indictment.

Appellant urges us to apply a presumptive *per se* reversal rule here, but in light of our above conclusion that appellant was entitled to an instruction reflecting the theory of his defense (*i.e.,* lack of intent), and the court's refusal to give that instruction was reversible error in its own right, we need not consider whether the constructive amendment error is independently reversible.[2]

*Reversed and remanded for a new trial.*

---

2. *See, e.g., Zacarias v. United States,* 884 A.2d 83, 86 n. 5 (D.C.2005) ("Whether our statement in [prior case law] that a showing of prejudice is unnecessary needs to be re-examined, in light of [*United States v.*] *Cotton[,* 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)] and (*Joyce) Johnson* [*v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)], is likewise an issue that we can defer to another day.").