Penelope M. WORMSLEY, a/k/a
Penelope M. Jacks, Appellant,

v.

UNITED STATES, Appellee.

No. 85–968.

District of Columbia Court of Appeals.

Submitted Jan. 15, 1987.
Decided June 5, 1987.

Ronny E. Jones, Washington, D.C., appointed by this court, was on the brief for appellant.

Joseph E. diGenova, U.S. Atty., Washington, D.C., with whom Michael W. Farrell and Harriet J. McFaul, Asst. U.S. Attys., were on the brief for appellee.

Before PRYOR, Chief Judge, and MACK and BELSON, Associate Judges.

PER CURIAM:

Appellant appeals from her conviction, after trial without a jury, for attempted taking property without right, D.C.Code §§ 22–103, –3816 (1981 & 1986 Supp.). Appellant argues that the evidence was insufficient to support her conviction. Finding the evidence sufficient to support a finding that she attempted to take and carry away the property of another without the right to do so, we affirm.

At appellant's trial, the shopkeeper of a small clothing store testified to the following events: Appellant, who was visibly pregnant, entered the store where the shopkeeper worked. The shopkeeper was

the only employee in the store at that time. Appellant selected two dresses from the racks. One of the dresses, which was blue, was cut "straight from the shoulders to just below the hips," and was "not a dress that a pregnant woman would wear." Appellant asked the shopkeeper if she could go into the dressing room, and the shopkeeper replied that she could. The shopkeeper testified that appellant's request "for some reason ... drew [her] attention to the outfits that [appellant] had."

Appellant carried the two dresses into a fitting room. The fitting room was covered by a curtain which stopped "about calf high" from the floor. There was "no obstruction" in the view from where the shopkeeper sat to the fitting room, which was about ten steps away.

While appellant was inside the fitting room, the shopkeeper "saw the blue dress drop below the curtain and fold." The shopkeeper could see appellant "right up against the curtain," and looking below the curtain and observing appellant's motions, could tell that the dress was being folded into thirds. Appellant did not appear to remove any clothing or to try on either dress. The shopkeeper, suspecting that a shoplifting was in progress, turned the lock on the shop's outer door. She testified that the turning of the lock made a loud noise.

When appellant exited the dressing room, she carried her white sweater draped over one arm and, on a hanger in the other arm, one of the dresses which she had taken into the dressing room. The shopkeeper noticed the second dress, the blue dress, "knotted up" *inside* the sweater, with only the dress' tags sticking out and part of its sash hanging down about four inches from inside the sweater. The shopkeeper could see the blue dress "quite readily," and was "positive" that it was inside the sweater.

The shopkeeper telephoned her husband to ask him to call the police. Meanwhile, appellant replaced on the rack the dress she had been carrying openly on the hanger, selected two other outfits, and returned to the dressing room. When appellant exited the dressing room a second

time, "she had all three dresses back on the hangers." Appellant returned the blue dress, along with the two other items, to the racks. By that time, the shopkeeper's husband and a private security guard had arrived. The police arrived soon afterward, and arrested appellant. Although the cost of the blue dress was $29.99, appellant had only two dollars with her at the time. At no time did appellant attempt to leave the store with any of the items.

At the close of the shopkeeper's testimony, appellant moved for a judgment of acquittal. The court denied the motion, commenting that it would "like to hear what [appellant] was doing by folding the dress up and putting it in the sweater." Both the court and defense counsel acknowledged that appellant's conduct had been ambiguous:

[DEFENSE COUNSEL]: Your Honor, we would submit that the mere fact that the defendant had this item on her arm with the sweater and she had other items as well she carried into the store is not unusual that she had only two hands [sic]. She had one with one dress in it and another one with another dress in it.

THE COURT: The first dress was folded up very nicely inside the sweater, why would that be?

[DEFENSE COUNSEL]: Your Honor, we would surmise it is a reasonable inference that the defendant could have been doing that as one way to carry the sweater around before she left the store.

THE COURT: And it also could be inferred she was stealing it, right?

[DEFENSE COUNSEL]: *That could be an inference.*

THE COURT: That's why your motion is denied, for that reason.

[Emphasis added.]

Appellant testified on her own behalf. According to her, she initially brought three, not two, items inside the dressing room. She lay one of the dresses on a chair because there was no room to hang it up. Appellant testified that she had tried on two of the dresses over the jumpsuit she was wearing by untying its shoulder straps and slipping the dresses on as far as her

waist. She did not try on the blue dress, however, because it did not have an elastic waist that would fit over her abdomen.

According to appellant, when she exited the dressing room the first time, she carried her pocketbook in one hand, and all three outfits, along with her sweater, draped over her other arm. At first, appellant testified that the blue dress was not folded up inside the sweater, but rather was across her arm "underneath the rest of the clothes." Later, however, she denied that she had had the blue dress at all during her first trip to the dressing room. Rather, she testified, she had taken and tried on three other items, each of which she returned to the racks. Only then, on her second trip, did she bring the blue dress, along with one or two other outfits, into the dressing room. Appellant denied that she had any intention to take the blue dress, and testified that she had planned to return to the store with a friend who would pay for her purchases.

■■■ To find appellant guilty of attempted taking property without right, the finder of fact must have found, beyond a reasonable doubt, that she attempted to 1) take and 2) carry away 3) the property of another 4) without the right to do so. *Tibbs v. United States*, 507 A.2d 141, 144 (D.C.1986). Looking at the evidence in the light most favorable to the government, *see, e.g., Blackledge v. United States*, 447 A.2d 46, 49 (D.C.1982), we cannot say that it was insufficient to support a finding that each of these elements was satisfied. To show attempt, the government needed only to prove an overt act done with the intent to commit a crime, and which, except for some interference, would have resulted in the commission of the crime. *Sellers v. United States*, 131 A.2d 300, 301 (D.C. 1957). It was not necessary for the government to have shown that appellant carried the merchandise past the cashier, nor that she attempted to leave the store

with it. *See Groomes v. United States*, 155 A.2d 73, 75 (D.C.1959). As even appellant's counsel conceded during the colloquy quoted above, one could infer that appellant had intended to take the blue dress when she folded it inside her sweater. While appellant's actions may have been ambiguous, it was not necessary for the government to negate every possible inference of innocence. *See Blackledge, supra,* 447 A.2d at 49. Given appellant's apparent dissemblance in folding the blue dress and concealing it inside her sweater, as well as her change of story about what she had done with the dress, the evidence was sufficient for the court to have found, beyond a reasonable doubt, that she had attempted to take the dress and to carry it away from the store. *Cf. Baldwin v. United States*, 521 A.2d 650 (D.C.1987);[1] *Singletary v. United States*, 519 A.2d 701, 702 (D.C. 1987) (court could infer intent to shoplift from appellant's attempt to conceal bottle inside sock and under pants leg).

*Affirmed.*

MACK, Associate Judge, dissenting:

This case is not about "[l]ooking at the evidence in the light most favorable to the government," or "[not requiring] the government to negate every possible inference of innocence." *Compare Blackledge v. United States*, 447 A.2d 46, 49 (D.C. 1982) cited by the majority at p. 1375. This case is rather a challenge to any factfinder; how far can one go in constructing a scenario from inferences, a scenario that relieves the government of proving beyond a reasonable doubt an essential element of a crime—*intent?* How far can an appellate court go in reciting talismanic legal litanies to sustain a factfinder's evidentiary construction that is logically flawed? Today the majority goes too far.

Penelope Wormsley has made the mistake of shopping for a dress which a court

---

1. *Baldwin* involved facts similar to the instant case. The appellant had taken rolled up dresses with price tags on them and put them under his arm, over which he draped a concealing coat. He left the immediate area of the store, passing available cash registers on his way to an exit.

He then returned to the area, put the dresses he was carrying under others on the floor, and left the store. *Id.* at 650. We found the appellant's actions sufficient to consummate the offense of shoplifting. *Id.* at 650–51.

has deemed inappropriate for a pregnant woman, of folding the dress, failing at first to place it back on a hanger while mingling it with her own clothing, and most distressing of all, of having only two dollars in her possession. As a result she has been charged with, and convicted of, attempted taking of property without right.

The majority has been most selective in grounding its inferences. Yet the government's evidence reveals that in this very small shop, appellant requested permission to enter the fitting room, showing the shopkeeper the two items of clothing which she wished to carry therein. The fitting room was located just ten steps away from the counter where the shopkeeper remained seated; the curtain at its entrance was calf-length. There is no question that appellant had from the beginning the shopkeeper's undivided attention, that the latter could see the folded blue dress below the fitting room curtain, and that when appellant emerged therefrom (after the shopkeeper locked the front door), the shopkeeper was "positive" that the blue dress was "knotted up" inside appellant's sweater with its tags visible and its sash dangling some four inches. There is likewise no question that when appellant emerged from the fitting room a second time, after selecting other items to carry therein, she placed all of the items back on the display racks from which they had been removed. If it were at all relevant, one might ask whether it is reasonable to infer that a thief, as the only customer in a small store, would show the shopkeeper the dresses she planned to try on, prepare to steal one by folding it up in the plain view of the shopkeeper, carry it in a manner supposedly meant to hide it, yet leave the tags and sash hanging out, and return it to the rack with all other selected items?

The majority has correctly defined the elements of the offense of taking property without right; the government must prove that the defendant (1) took and (2) carried away (3) the property of another (4) without right to do so. *See Tibbs v. United States*, 507 A.2d 141, 144 (D.C.1986). I do not question that one need not cross the threshold of store property or pass a cash register to be convicted of the traditional crime of shoplifting. I do suggest that the evidence here does not establish an essential element of the offense of taking property without right—the element of "carrying away," or the attempt to do so. *See Sellers v. United States*, 131 A.2d 300, 301 (D.C.1957) (to show an attempt the government need only prove an overt act with intent to commit a crime and which, except for some interference, would have resulted in the commission of the crime). Surely the mere folding of a dress in a small fitting room cannot be considered an overt act sufficient to denote an intention to carry it away; if its proximity to appellant's sweater, observed after the door was locked, could be called a concealment relevant to intent, one is left with the question of what was the act of interference which thwarted the commission of the crime.

In any event, the cases upholding convictions for shoplifting or larceny on sufficiency grounds, relied upon by the majority, are not controlling, for the simple reason that they turn on facts from which a reasonable inference of intent could be drawn. Thus, in *Singletary v. United States*, 519 A.2d 701 (D.C.1987), where the court found that a person could be found guilty of completing the offense of shoplifting without leaving the store, a private security guard observed the appellant try to conceal a bottle of body lotion inside his sock under his left pants leg. When the security guard approached him, appellant dropped the bottle of lotion and "started to run around the store, 'hollering' and acting hysterical." *Id.* at 701. The trier of fact could reasonably infer the necessary intent from the appellant's obvious attempt to conceal as well as his unusual behavior when he realized that he had been observed in the process. In *Baldwin v. United States*, 521 A.2d 650 (D.C.1987), where the court also found the evidence sufficient to support a conviction for shoplifting, there was similarly strong circumstantial evidence from which the jury could infer intent. Appellant was observed tucking rolled-up ladies' dresses under his arm, draping a concealing coat over the dresses, and leaving the

area of the store where the dresses were sold, passing available cash registers. He started to walk towards a stairway exit, but instead came back and shoved the dresses under other dresses on the floor which were under a rack near the stairway. Subsequently, the eyewitness observer directed a security guard to the spot under the rack where the dresses were still rolled up into a ball. In *Groomes v. United States,* 155 A.2d 73 (D.C.1959), the court, in sustaining a conviction for petit larceny, found that the appellant's actions were wholly inconsistent with those of a prospective purchaser, where she was observed removing two items from a shelf (including a package of cold meat), secreting them in her closed purse in a shopping cart and approaching a checkout line. When she realized that she was being approached by store employees, she walked to the rear of the store, surrendered the items, and made an incriminating statement.[1] By contrast, in the instant case, the evidence is insufficient to show either an attempt to conceal or a consciousness of guilt.

The majority here has sustained a conviction based on mere speculation—speculation based on groundless suspicions voiced from the very beginning by the shopkeeper, and subsequently echoed by the trial judge and by this court. I respectfully dissent.

---

1. *See also Kinard v. United States,* 416 A.2d 1232 (D.C.1980) (defendant was observed placing sheets inside a shopping bag; he passed several cash registers and was arrested only after trying to leave); *Montgomery v. United States,* 384 A.2d 655 (D.C.1978) (defendant's companion was viewed putting items into a bag while defendant played lookout; codefendant set the bag down when he realized a security guard was following him on the way out of the store); and *Flecher v. United States,* 358 A.2d 322 (D.C.1976) (appellant was observed placing items in a paper bag and covering them up, and passed several cash registers before being arrested).