*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CM-651

RICHARD C. JONES, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-17628-12)

(Hon. Robert E. Morin, Trial Judge)

(Submitted September 29, 2014               Decided September 17, 2015)

*Nicholas Q. Elton* was on the briefs for the appellant.

*Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Elizabeth H. Danello*, and *Ann K. H. Simon*, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER and BECKWITH, *Associate Judges*, and FARRELL, *Senior Judge*.

Opinion for the court by *Associate Judge* BECKWITH.

Concurring opinion by *Associate Judge* BECKWITH at page 12.

BECKWITH, *Associate Judge*:  Appellant Richard Jones was convicted, after a

bench trial, of attempted threats[1] for a statement he made toward his daughter's guardian ad litem following a contentious family court hearing.  Mr. Jones claims four errors:  that the trial court erred by denying his motion for a new trial, that attempted threats is not a valid offense under D.C. law, that the record contains insufficient evidence to support his conviction, and that he was denied his right to a jury trial when the government amended the information from charging misdemeanor threats to attempted threats just moments before trial.  We affirm.

## I.

Dennis Eshman, the complainant in this case, represented Mr. Jones's daughter as her guardian ad litem in a family court matter for nearly four years.  At a hearing in June 2012, Mr. Eshman recommended that Mr. Jones's visits with his daughter be supervised.  Mr. Eshman testified that when he left the courtroom, Mr. Jones stopped him in the hallway and said, "I'm going to smack the shit out of you."  The statement was made "in pretty close to a normal tone of voice, maybe just a little bit elevated."  Mr. Jones then expressed his displeasure with Mr. Eshman's recommendation of supervised visitation, and "his voice escalated so that he got to the point where he was yelling at" Mr. Eshman.  Mr. Eshman was initially "taken aback" and eventually came to believe that his physical safety was

---

[1]  D.C. Code §§ 22-407 and -1803 (2012 Repl.).

"in jeopardy."

The defense countered with testimony from Khadijah Ali, an attorney who witnessed the incident while passing through the hallway of the courthouse. Ms. Ali testified that she saw Mr. Jones "very angry and he was quite loud and he was arguing with" Mr. Eshman. But she also testified that she could "hear clearly what was being said" and she did not hear any threats. Specifically, she testified that she did not hear Mr. Jones say, "I'm going to smack the shit out of you."

The trial judge found that both witnesses were credible and that their testimony was not actually inconsistent. The judge found that while Ms. Ali did not hear any threat, her attention was not drawn to the scene until Mr. Jones became angry and loud, which occurred after he had already uttered the threat in a normal tone of voice. The court convicted Mr. Jones of attempted threats. Mr. Jones filed a motion for a new trial,[2] which was denied, and this appeal followed.

## II.

Mr. Jones first argues that the trial court erred by denying his motion for a new trial. Mr. Jones's motion contended, among other things, that his trial counsel

---

[2] Mr. Jones first filed his motion pro se and then appointed counsel filed a supplemental memorandum. That attorney was later removed and another attorney submitted a third motion and argued it in court.

was ineffective for failing to investigate and present evidence of Mr. Eshman's bias against Mr. Jones in order to impeach Mr. Eshman's testimony. Having raised these claims in a motion under Rule 33 of the Superior Court Rules of Criminal Procedure, Mr. Jones argued—and the trial court agreed—that he need not demonstrate a violation of his Sixth Amendment right to counsel pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), to be awarded a new trial, but needed only to show that a new trial was necessary in "the interests of justice." Super. Ct. Crim. R. 33. The trial court concluded that a new trial was unnecessary because it had already heard testimony regarding the events that allegedly gave rise to Mr. Eshman's bias—a specific prior incident between the two men and the fact that Mr. Jones had filed bar complaints against Mr. Eshman. More broadly, the court stated that it was "aware of the hostility, frankly, generally, that Mr. [E]shman testified to and acknowledged between Mr. Jones and Mr. [E]shman." The trial court determined that additional evidence of their prior relationship and Mr. Eshman's alleged bias would not have affected its determination that Mr. Eshman's testimony was credible.

We review the denial of a Rule 33 motion for abuse of discretion. *Austin v. United States*, 64 A.3d 413, 427 (D.C. 2013). Mr. Jones argues that the trial court abused its discretion because the additional evidence proffered was "fundamental to creating a full impression for [the] trier of fact." The trial court stated that it

examined the motion in detail, including the "extensive" attachments, and compared that evidence to the testimony that had been elicited at trial. We have no reason to second-guess the trial court's conclusion that it was already well enough informed of Mr. Eshman's potential bias against Mr. Jones from the trial testimony and that additional testimony regarding the relationship between the two men would not affect the court's decision. The trial court did not abuse its discretion by denying Mr. Jones's Rule 33 motion.

## III.

Mr. Jones next argues that his conviction must be reversed because attempted threats is not a valid statutory offense. This claim was not raised in the trial court, so we review for plain error. *Howerton v. United States*, 964 A.2d 1282, 1286 (D.C. 2009). Mr. Jones must demonstrate that charging him with attempted threats "was (1) error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Coleman v. United States*, 948 A.2d 534, 544 (D.C. 2008)). He cannot meet this rigorous standard. *See Evans v. United States*, 779 A.2d 891, 895 (D.C. 2001) ("To sum up, we hold that attempted threats is a valid statutory offense under the laws of the District of Columbia.").

Mr. Jones argues that because misdemeanor threats is a general intent

crime,[3] *see Carrell v. United States*, 80 A.3d 163, 170-71 (D.C. 2013), *vacated, reh'g en banc granted*; *Holt v. United States*, 565 A.2d 970, 971-72 (D.C. 1989) (en banc), and because an attempt conviction requires the government to prove "specific intent to commit the crime one is attempting," *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991) (citing *Morissette v. United States*, 342 U.S. 246, 263 (1952)),[4] one cannot attempt a general intent crime and "there cannot be an 'attempted threat.'" But Mr. Jones is incorrect in his assertion that one cannot be

---

[3] The terms "specific" and "general" intent, though used routinely by courts and treatise writers, are somewhat vague and "often confusing." Judicial Council of California Criminal Jury Instructions xxvi (2015) (explaining that the instructions avoid using the terms for these reasons); *see also Perry v. United States*, 36 A.3d 799, 809 n.18 (D.C. 2011) (noting that the terms "can be too vague or misleading to be dispositive or even helpful"). Ideally, instead of describing a crime as a "general intent" or "specific intent" crime, courts and legislatures would simply make clear what mental state (for example, strict liability, negligence, recklessness, knowledge, or purpose) is required for whatever material element is at issue (for example, conduct, resulting harm, or an attendant circumstance such as dealing drugs in a *school zone* or assaulting a *police officer*). Our decisions have typically used the term "specific intent" to mean that the crime of attempt requires proof of purpose or intent to commit the conduct or, in a result crime, to cause the resulting harm. Thus, we have described attempted robbery as requiring proof of a "specific intent to commit the offense of robbery." *See Johnson v. United States*, 756 A.2d 458, 463 n.3 (D.C. 2000) (defining the elements of attempted robbery). Because our decisions have used this term, we use it here as well.

[4] *Braxton* noted that at common law, attempt requires a specific intent to commit the unlawful act, and the Court held that to support a sentence for "attempted killing," the government must establish more than the fact "that Braxton had shot 'at the marshals'[;] it would also have to have established that he did so with the intent of killing them." 500 U.S. at 350-51 & n.*.

convicted for attempting to commit a general intent crime,[5] and thus he can show no error. Mr. Jones similarly argues that one cannot be convicted of an attempt for "[c]rimes that do not involve intent to do a criminal act," *Cox v. State*, 534 A.2d 1333, 1335 (Md. 1988), stating that "[i]t makes no sense to speak of attempted involuntary manslaughter or attempted negligence." This maxim is irrelevant here because the misdemeanor offense of threats *does* require intent to act—intent to utter statements that constitute a threat. *Joiner-Die v. United States*, 899 A.2d 762, 764 (D.C. 2006).[6]

---

[5] *See, e.g.*, *Dauphine v. United States*, 73 A.3d 1029, 1033 (D.C. 2013) (upholding conviction for attempting to commit a general intent crime); *Smith v. United States*, 813 A.2d 216 (D.C. 2002) (same); *Wormsley v. United States*, 526 A.2d 1373, 1375 (D.C. 1987) (same).

[6] Mr. Jones raises three additional arguments that are without merit. First, he argues that one cannot be charged with an attempt for "substantive crimes that are, themselves, in the nature of attempts." The case he cites for this proposition, *Moore v. State*, 882 A.2d 256, 269 (Md. 2005), provides simple assault as an example. *See also Dabney v. State*, 858 A.2d 1084, 1097 (Md. 2004) ("Since a simple assault is nothing more than an attempt to commit a battery, . . . an attempt to commit an assault . . . is not a crime."). Mr. Jones does not explain why misdemeanor threats would fit into this category of crimes, however.

Second, he argues that "[b]ecause the crime of threats as now enumerated in D.C. Code § 22-407 (2001) was first enacted in 1912," the general attempts statute of D.C. Code § 22-1803 (2012 Repl.) "does not apply." This argument was rejected by *Evans*, 779 A.2d at 893-94.

Third, Mr. Jones argues in passing that the charge of attempted threats "runs afoul of First Amendment protections" by criminalizing speech that is "unspoken" or "unheard." Such concerns are not implicated in this case, however, where the

(continued…)

For these reasons, attempted threats is a valid offense in the District, and the trial court did not err in convicting Mr. Jones.

## IV.

Mr. Jones argues that the record contains insufficient evidence that he was guilty of attempted threats. Assuming that the government was required to prove that Mr. Jones possessed specific intent to threaten,[7] the record contains sufficient evidence that Mr. Jones intended to threaten Mr. Eshman with bodily harm by

---

(…continued)

evidence showed that his threat was both spoken and heard. Because Mr. Jones does not explain why *his* speech would be constitutionally protected, we need not consider his claim in more depth.

[7] As discussed above, Mr. Jones contends, when arguing that attempted threats is not a valid crime in the District, that an attempt conviction requires specific intent. He does not renew his contention that specific intent is necessary when arguing that the government presented insufficient evidence to support his conviction, and he even quotes *Carrell*, which indicates the contrary. We give Mr. Jones the benefit of the doubt, however, and assume that the government must prove specific intent to convict. And because we assume that specific intent is required for an attempt conviction, we also need not consider in this case whether specific intent is required for a threats conviction in accordance with the Supreme Court's recent decision in *Elonis v. United States*, 135 S. Ct. 2001 (2015), holding that the federal threats statute requires the government to prove that the defendant "transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat," while leaving open the possibility that recklessness would suffice as well. *Id.* at 2012. This court has granted rehearing en banc in *Carrell* to address the level of intent required for a threats conviction in the District.

telling him, "I'm going to smack the shit out of you." Mr. Jones's insistence that his statement was "rendered benign by [its] context," *In re S.W.*, 45 A.3d 151, 156 (D.C. 2012), is unavailing. Even if the statement was made in a "normal tone of voice," a reasonable factfinder could conclude that Mr. Jones possessed specific intent to threaten Mr. Eshman with serious bodily harm given the tumultuous and emotionally charged nature of their relationship and the fact that Mr. Jones later started yelling and gesticulating at Mr. Eshman in the hallway. It also is not a defense that Mr. Eshman was only startled by the threat because "[a] person can be guilty of threats without causing the target of the threats to fear serious bodily harm or injury." *Gray v. United States*, 100 A.3d 129, 136 (D.C. 2014) (citation omitted). Viewing the evidence in the light most favorable to the government, we conclude that the evidence is sufficient to sustain Mr. Jones's conviction.

## V.

Mr. Jones argues that the trial court erred by allowing the government to amend the information on the day of trial in order to deny his right to trial by jury.[8] Mr. Jones was first charged with misdemeanor threats in violation of D.C. Code § 22-407 (2012 Repl.), which carries a maximum penalty of six months

---

[8] This claim is subject to plain error review. When the government moved to amend the information prior to trial, defense counsel responded, "No objection, Your Honor."

incarceration and triggers a defendant's statutory right to a jury trial in the District.[9] *See* D.C. Code § 16-705 (b) (2012 Repl.); *Turner v. Bayly*, 673 A.2d 596, 602 (D.C. 1996). Moments before the trial began, the government amended the information to attempted threats under D.C. Code §§ 22-407 and -1803. This charge carries a maximum penalty of 180 days' incarceration, which is *not* sufficient to trigger one's statutory right to a jury. D.C. Code § 16-705 (b). Ruling on Mr. Jones's claim of error in his motion for a new trial, the trial court rejected Mr. Jones's argument "based on [its] understanding of the law at this time [that] the Government does have the right to amend even if that results in a denial of the jury trial on the charge."

Rule 7 of the Superior Court Rules of Criminal Procedure specifies that an information may be amended "at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Super. Ct. Crim. R. 7 (e); *see Dyson v. United States*, 485 A.2d 194, 197 (D.C. 1984). The question for us, then, is whether Mr. Jones suffered any

---

[9] This charge does not, however, trigger Mr. Jones's constitutional right to a jury trial. *See United States v. Nachtigal*, 507 U.S. 1, 3 (1993) (citing *Blanton v. City of North Las Vegas*, 489 U.S. 538, 543 (1989)) ("[O]ffenses for which the maximum period of incarceration is six months or less are presumptively 'petty.'"). We therefore need only address whether Mr. Jones was improperly denied his *statutory* right to a jury trial.

prejudice—and in this case, prejudice substantial enough to reverse under the plain error standard—from the government's decision to amend the information moments before trial.[10]

This record reveals no such prejudice. While Mr. Jones argued that a jury trial was necessary because "the complaining witness is an attorney . . . who has appeared in front of almost every Judge in Superior Court," his statutory right to a jury trial was contingent upon demanding a jury trial in the first place, *see* D.C. Code § 16-705 (b)(2), which he never did.[11] And because Mr. Jones did not object to the amendment, there is no indication in the record that the amendment in any way altered the defense Mr. Jones was prepared to present.[12]

---

[10] While the amendment here also charged a "different offense" of attempted threats, it does not constitute reversible error for that reason. *Dyson*, 485 A.2d at 197 (citing *Gov't of the Canal Zone v. Burjan*, 596 F.2d 690, 692-93 (5th Cir. 1979)) (noting that amending the information to charge a lesser included offense is a "technical violation of Rule 7(e) but harmless").

[11] While Mr. Jones argued in the trial court that he received ineffective assistance of counsel because his trial counsel never demanded a jury trial, he has not presented that claim to us on appeal.

[12] We therefore need not address whether, in a case where the issue is properly preserved, a particular defendant may be able to show prejudice under Rule 7 from an amendment that results in his losing his right to a jury trial. *See, e.g.*, *State v. Kroll*, 107 P.3d 1201, 1203 (Haw. Ct. App. 2005).

## VI.

Because we reject each of Mr. Jones's claims of error, his conviction is affirmed.

*So ordered.*

BECKWITH, *Associate Judge*, concurring:  In arguing that attempted threats is not a valid crime in the District, Mr. Jones relies on the Supreme Court's decision in *Braxton v. United States*, 500 U.S. 344 (1991), which stated that the elements "for an 'attempt' at common law . . . include a specific intent to commit the unlawful act." *Id.* at 351 n.* (citing *Morissette v. United States*, 342 U.S. 246, 263 (1952)).  I write separately to make note of an inconsistency in our case law regarding the extent to which this common law proposition applies in the District of Columbia.

In *Sellers v. United States*, 131 A.3d 300 (D.C. 1957), the Municipal Court of Appeals for the District of Columbia defined the elements of attempt as follows: "any overt act done with intent to commit the crime and which, except for the interference of some cause preventing the carrying out of the intent, would have resulted in the commission of the crime." *Id.* at 301 (quoting 14 Am. Jur.,

Criminal Law, § 65, p. 813). Thirty years later, in *Wormsley v. United States*, 526 A.2d 1373 (D.C. 1987), this court upheld the appellant's conviction for attempted taking property without right after concluding that the record contained sufficient evidence that she intended to steal a dress because of her "apparent dissemblance in folding the blue dress and concealing it inside her sweater, as well as her change of story about what she had done with the dress." *Id.* at 1375. Appellant's specific intent to commit a crime was central to the court's holding, even though the underlying crime required only general intent to commit the act constituting the crime. *See Fogle v. United States*, 336 A.2d 833, 835 (D.C. 1975).[1]

Then in *Ray v. United States*, 575 A.2d 1196 (D.C. 1990), we stated that "[e]very completed criminal offense necessarily includes an attempt to commit that offense." *Id.* at 1199 (holding that appellant was guilty of the "attempted-battery" type of assault even though the evidence showed a completed battery).[2] In

---

[1] *Fogle* held that the government did not need to prove "an intent to violate the law" to be guilty of taking property without right, upholding a conviction based on unauthorized removal of automobiles even though the appellant "believed that he had been authorized by the property managers to do so." *Id.*

[2] *Ray* relied in part on *United States v. Fleming*, 215 A.2d 839 (D.C. 1966), which rejected "the rule that a defendant charged with an attempt must be acquitted if shown to have committed the full offense." *Id.* at 841-42. But *Fleming* did not state—as *Ray* did—that any completed offense necessarily includes the attempt. *Fleming* simply stands for the proposition that failure is not an essential element of

(continued…)

reaching this conclusion, *Ray* did not grapple with *Wormsley*'s premise that an attempt requires specific intent. We later applied *Ray* to an attempted threats charge under D.C. Code §§ 22-407 and -1803 in *Evans v. United States*, 779 A.2d 891 (D.C. 2001), holding that the government could charge attempted threats "even though it could prove the completed offense." *Id.* at 894. In other words, the government needed only to prove general intent to sustain a conviction for attempted threats. *See also Jenkins v. United States*, 902 A.2d 79, 87 (D.C. 2006) (noting that *Evans* analyzed threats as a general intent crime). While the court in *Evans* acknowledged *Wormsley*'s holding on attempt, *Wormsley* did not control its analysis. Relying principally on *Ray*, the court explained that "[o]ur decisions have repeatedly held that 'a person charged with an attempt to commit a crime may be convicted even though the evidence shows a completed offense, not merely an attempt.'" *Evans*, 779 A.2d at 894 (quoting *Ray*, 575 A.2d at 1199).

In *Smith v. United States*, 813 A.2d 216 (D.C. 2002), this court recognized the difficulty of the attempt issue, stating that "[t]o speak of 'specific intent' in the context of a prosecution for attempted anything is, in our view, somewhat misleading." *Id.* at 219. The court reiterated *Wormsley*'s premise that "[t]he only

(…continued)

an attempt; it neither discussed nor implied what mens rea is required when the government charges an attempt as opposed to the completed charge.

intent required to commit the crime of attempt is an intent to commit the offense allegedly attempted." *Id.* (citing *Wormsley*, 526 A.2d at 1375). But the court also stated that "[o]ur decision in *Evans* necessarily means that when an attempt is proven by evidence that the defendant committed the crime alleged to have been attempted, the intent required to commit the crime of attempt can be no greater than the intent required to commit the completed crime." *Id.* (citing *Evans*, 779 A.2d at 894). The court then held that there was sufficient evidence of attempted second-degree cruelty to children when the appellant "intended to commit the acts which resulted in . . . the grave risk of injury" to the child, even though he did not intend to injure the child. *Id.* at 219-20.

Yet while *Evans* continues to feature prominently in our case law,[3] other recent cases have required specific intent for an attempt conviction. For example, in *Brawner v. United States*, 979 A.2d 1191 (D.C. 2009), the court held that for an attempted escape conviction, the government must prove "the mental state of intending to commit the underlying offense," that is, "intent to escape," even though a charge for a completed escape did not involve such intent. *Id.* at 1194. And in *Dauphine v. United States*, 73 A.3d 1029 (D.C. 2013), this court held that

---

[3] *See, e.g.*, *Lewis v. United States*, 95 A.3d 1289, 1291 (D.C. 2014); *Newman v. United States*, 49 A.3d 321, 324 (D.C. 2012).

animal cruelty is a general intent crime but nonetheless stated that "where the government charges an individual with attempt, as it did here, the government must demonstrate that the defendant possessed the intent to commit the offense allegedly attempted." *Id.* at 1033 (citation and internal quotation marks omitted). We held that the record contained sufficient evidence that the "appellant acted with intent to commit the crime of cruelty to animals," and we affirmed her conviction. *Id.*

The *Wormsley-Brawner-Dauphine* line of cases requiring the government to prove specific intent to commit the crime intended appears to be in direct tension with the *Evans-Smith* line of cases that does not require such proof.[4] Because Mr. Jones's case arises on plain error review, however, we need not resolve this tension in our jurisprudence, and we need not decide whether Mr. Jones is correct that the common law intent element for attempt as articulated by the Supreme Court in *Braxton* is the law of this jurisdiction.

---

[4] As the elements of a crime are determined by what offense the government charges, not by what evidence it presents at trial, *Evans* and *Smith* cannot be distinguished from *Wormsley*, *Brawner*, and *Dauphine* on the ground that the government proved a completed offense in the former cases and an attempted offense in the latter. *Cf. United States v. Gaudin*, 515 U.S. 506, 522-23 (1995) ("The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged.").