Easterly, Associate Judge:
Marlon Williams was arrested and prosecuted for the shooting death of Min Soo Kang. As no eyewitnesses to the crime were discovered and as Mr. Williams had no known relationship with Mr. Kang, it took a number of investigative steps for the police to connect Mr. Williams with.the crime: after finding Mr. Kang’s body, the police located his car; after examining fingerprints recovered from Mr. Kang’s car, the police identified Mr. Williams as a potential suspect; and after searching Mr. Williams’s apartment, the police recovered a gun that, when test-fired, left markings on the bullets that appeared to match the markings on bullets recovered from Mr. Kang’s car. This evidence, in conjunction with the testimony of an individual to whom Mr. Williams had made incriminating statements while they were in the courthouse cellblock, formed the bulk of the government’s case. After considering this evidence, a jury convicted Mr. Williams of first-degree felony murder while armed,[1] attempt - to commit robbery while armed,[2] two counts of possession of a firearm during a crime of violence (PFCV),[3] and carrying .a pistol without a license.[4] He received an aggregate sentence of 480 months’ imprisonment.
On appeal Mr. Williams primarily attacks the firearms and toolmark evidence presented against him, arguing among other things that, although defense counsel never objected, the examiner should not have been permitted to testify that the markings on the bullets recovered from Mr. Kang’s car were “unique” to the gun recovered from Mr. Williams’s apartment and thus that he did not have any doubt of their source. Because, to date, this court has only assumed without deciding that such testimony of absolute certainty is impermissible, we conclude that Mr. Williams has failed to establish. that it was plain error for the trial court to permit the jury to hear it. We discern no other error warranting reversal, although we agree that Mr. Williams’s attempted robbery conviction and associated PFCV conviction merge with his felony murder conviction and must be vacated.
I. Facts
In the early morning hours of September 13, 2010, the bullet-riddled body of Min Soo Kang was discovered lying on the side of the road in Southeast D.C. The Metropolitan Police Department (MPD) began investigating and learned that Mr. Kang drove a Cadillac Escalade equipped with OnStar, a service that could remotely disable the vehicle. At MPD’s request, OnStar disabled Mr. Kang’s Escalade by the evening of September 13 and directed MPD officers to the vehicle’s location in Northeast D.C,
An MPD officer inspected the Escalade. He found no damage to the exterior of the *346 car but discovered what he suspected were bullet holes in the backrest of the driver’s seat. The officer cut into the seat and recovered three bullets. He also collected fingerprints from the Escalade.
An MPD fingerprint examiner entered the fingerprints lifted from the Escalade into the national Automated Fingerprint Identification System (AFIS), which connects unknown prints to known prints in a digital database, AFIS identified Mr. Williams as a possible source of the fingerprints. Based on the fingerprint examiner’s preliminary conclusion that the prints on the Escalade belonged to Mr. Williams, MPD applied for and was granted a search warrant for Mr. Williams’s residence. Executing this' warrant, MPD officers recovered a High Point brand firearm from Mr. Williams’s bedroom.
At trial,[5] the government relied almost exclusively on forensic evidence, presenting expert testimony from a fingerprint examiner and a firearms and toolmark examiner.[6] The fingerprint examiner testified to his conclusion that the prints recovered from the Escalade belonged to Mr. Williams,- The firearms and toolmark examiner, Luciano Morales, testified on direct examination that when a bullet is fired from a particular gun, .the gun leaves “unique” identifying marks, “similar to a fingerprint,- basically.” He then testified that he had compared the markings on the bullets recovered, from Mr. Kang’s ear with the markings on the bullets test-fired from the gun recovered from Mr. Williams’s apartment (manufactured by High Point and admitted as Exhibit No. 58), and he had concluded that the bullets were fired by the same gun. On redirect, when the prosecutor asked whether there was “any doubt in [his] mind” that the bullets recovered from Mr. Kang’s Esca-lade were fired from the gun found in Mr. Williams’s room, the examiner responded, “[n]o sir.” He elaborated that “[t]hese three bullets were identified as being fired out of Exhibit No. 58. And it doesn’t matter how many firearms High Point made. Those markings are unique to that gun and that gun only.” The prosecutor then asked the examiner whether, “judging from the markings that you find in 58, it’s your conclusion that those three bullets were fired from 58?” The examiner was unequivocal: “Item Number 58 fired these three bullets.”
. Counsel for Mr. Williams did not object to any of this testimony. The jury also heard stipulations that a print lifted from the gun did not match Mr. Williams and that the blood and DNA recovered from the gun did not match Mr. Kang or Mr. Williams. The jury convicted Mr. Williams on all charges.
II. Analysis
A. Sufficiency of the Evidence
We first address Mr. Williams’s argument that the government did not present sufficient evidence to support his felony murder conviction because it failed *347 to establish the underlying ’felony of attempted robbery, and specifically failed to prove that Mr, Williams, and. not another person, had stolen.Mr. Kang’s Escalade. Reviewing the sufficiency of the evidence de novo, Nero v. United States, 73 A.3d 153, 157 (D.C.2013), we disagree. As Mr. Williams acknowledges in his brief, the. government presented the following evidence t(o support an. attempted robbery conviction: (1) testimony by the fingerprint examiner that the fingerprints lifted from both the exterior and interior of Mr. Kang’s Escalade matched Mr. .Williams; (2) eyewitness testimony that a person consistent with Mr. Williams’s physical description was seen opening and closing the hood of the Escalade around the time it. was disabled; and (3) testimony by the firearms and toolmark examiner that the bullets recovered from the Escalade matched bullets fired from Mr. Williams’s gun. From this evidence, drawing all reasonable inferences in favor of the government as we must, Nero, 73 A.3d at 157, we conclude that the- jury- reasonably could have determined that Mr. Williams stole Mr. Kang’s car, and thus necessarily committed the crime of attempted robbery.[7] See Ray v. United States, 575 A.2d 1196, 1199 (D.C.1990) (“Every completed criminal offense necessarily includes an attempt to commit that offense.”). But see (Richard) Jones v. United States, 124 A.3d 127, 132-34 (D.C.2015) (Beckwith, J., concurring) (highlighting conflicting precedent from this court indicating that for general intent crimes, an attempt conviction requires proof of a higher mens rea than conviction for the completed offense).
B. The Firearms and Toolmark Examiner’s Opinion Testimony
Mr. Williams argues that the firearms and toolmark examiner should not have been able to testify that the markings on the bullets recovered from Mr. Kang’s Escalade were unique or that he was without “any doubt” that these bullets were fired from the gun found in Mr. Williams’s room. Because Mr. Williams did not object at trial to this testimony, we review only for plain error. See (John) Jones v. United States, 990 A.2d 970, 980-81 (D.C.2010). To prevail under this test, it is not enough for an appellant to demonstrate error; the appellant must also show that the error is plain, i.e., that the error is “so egregious and obvious as to make the.trial judge and prosecutor derelict in permitting it, despite the defendant’s failure to object.” Id. at 981. We attribute such dereliction to the trial court only when an error is “clear under current law.”[8] Conley v. United States, 79 A.3d 270, 289 (D.C.2013) (quoting United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). Applying this standard, we cannot say the trial court plainly erred by permitting the jury to hear the examiner’s certainty statements.
There is no precedent in this jurisdiction that limits a toolmark and firearms *348 examiner’s testimony about the certainty of his pattern-matching conclusions. The closest this court has come to addressing this issue was in (.Ricardo) Jones v. United States, 27 A.3d 1130 (D.C.2011). In that case the defense argued inter alia that toolmark and firearms examiners could not “stat[e] their conclusions with ‘absolute certainty excluding all other possible firearms.’ ” Id. at 1138, In response, the government assured this court, both in its appellate brief and at oral argument, that it was the government’s policy not to present such testimony. “In light of the government’s representation,” this court “assume[d], without deciding, that such experts should not be permitted to testify that they are 100% certain of a match, to the exclusion of all other firearms.” Id. at 1139. The court then determined that any such error was harmless. Id. Jones did not plainly bar the toolmark examiner in this case from testifying as he did and does not provide a foundation for a determination of plain error.
Nor can we say that the weight of non-binding authority outside this jurisdiction is a sufficient foundation for a determination that the -trial court “plainly” erred by not sua sponte limiting the tool-mark examiner’s testimony. See Euceda v. United States, 66 A.3d 994, 1012 (D.C.2013) (holding that error cannot be plain where neither this court nor the Supreme Court has decided the issue, and other courts are split on the issue). We are aware of only one state supreme court decision[9] and no federal appellate decisions limiting the opinion testimony of firearms and toolmark examiners. Indeed, as one federal district court judge has observed, “[although the scholarly literature is extraordinarily critical” of toolmark pattern-matching, it appears that courts have made little effort to limit or qualify the admission of such evidence.[10] United States v. Green, 405 F.Supp.2d 104, 122 (D.Mass.2005).
Mr. Williams refers us to the policy representation made by the government in Jones. The government concedes that, at Mr. Williams’s trial, it violated its policy “to only elicit firearms examiners’ opinions to a reasonable degree of scientific certainty.” But this concession cannot serve as the sole foundation for a determination of plain error. The government’s internal policy does not-constitute binding law[11]— let alone a “clear” or “obvious” rule — that a trial court should be presumed to know.[12] *349 Cf. Rose v. United States, 49 A.3d 1252, 1256, 1258 (D.C.2012) (holding .that a trial court’s error could not be plain when there was “no clear case law” in our jurisdiction and that a published concurrence from a judge of this court, while on point, “is not the law of our jurisdiction”).
Since Mr. Williams has not shown that the state of the law is such that the trial court plainly should have sua sponte precluded or struck the certainty statements of the firearms and toolmark examiner in this case, Mr. Williams’s unpreserved challenge to these certainty statements cannot prevail under our test for plain error.
C. Confrontation Clause and Hearsay Challenges to the Firearms and Toolmark Evidence
Regarding the firearm and toolmark evidence presented in this case, Mr. Williams also challenges the admission, over objection, of two “worksheets” documenting the analysis of the bullets. These worksheets were signed by the firearms and toolmark examiner who testified at trial, Mr. Morales, but they also bore the signature and initials of his colleague, the “lead examiner on that particular case,” Rosalyn Brown.[13] The government did not call Ms. Brown to testify because she had since been fired. On appeal, Mr. Williams argues that the admission of the worksheets violated his Sixth Amendment right to confrontation.
The Confrontation Clausé of the Sixth Amendment, U.S. Constamend. VI, prohibits the government from introducing “testimonial” hearsay at a criminal trial, unless the declarant isunavailable and the defendant has had a prior opportunity to cross-examine him. Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). A hearsay statement is considered testimonial if it is “ ‘a solemn declaration or affirmation made for the purpose of establishing or proving some fact’ ... in the prosecution or investigation of a crime.” Young v. United States, 63 A.3d 1033, 1039-40 (D.C.2013) (quoting Crawford, 541 U.S. at 51, 124 S.Ct. 1354). Forensic evidence is also subject to the Confrontation Clause, which means a defendant must have an opportunity to cross-examine the analyst who actually conducted or observéd the forensic testing. Id. at 1039.
Assuming. the ballistics worksheets contained Ms. Brown’s testimonial hearsay statements, we conclude that their erroneous admission was harmless. See Duvall v. United States, 975 A.2d 839, 843 (D.C.2009) (applying the test for harmless error under Chapman v. California, 386 U.S. 18, 87 S.Ct 824, 17 L.Ed.2d 705 (1967) to admission of a lab report in violation of the Confrontation Clause). To begin with, the jury never heard any testimony about Ms. Brown’s observations and conclusions in Mr. Williams’ case and thus *350 had no reason to think that the worksheets might document her examination of the bullet and firearm -evidence. On the contrary, Mr. Morales testified (without “any doubt”, see supra Part II.B) only as to his own observations and conclusions. Meanwhile, the prosecution made no reference to another examiner in closing or rebuttal. Lastly, nothing on the worksheets themselves indicated that they reflected the independent conclusions of another, absent examiner. Thus, at most, the jury saw an ambiguous extra signature at the bottom of a document that Mr. Morales had testified reflected his work product. Based on these particular facts, we cannot discern any harm to Mr. Williams from admission at his trial, of these worksheets.[14]
D. Other Issues
With one exception, Mr. Williams’s remaining arguments fail. His unpreserved challenge to the admission of fingerprint evidence fails the third prong of the test for plain error where trial counsel conceded,'both in opening and in closing, that the fingerprints on the Escalade belonged to Mr. Williams.[15] Mr. Williams’s new argument that he is entitled to a Franks hearing[16] also fails; the trial court did not plainly err by overlooking the discrepancy between the affidavit in support of the search warrant for Mr. Williams’s apartment, which cited fingerprint evidence as a basis for probable cause, and the fingerprint examiner’s testimony that he reviewed the prints and linked them to Mr. Williams on a date after the search warrant was executed. Instead, given other documentation indicating that the fingerprint examiner was asked to analyze the latent prints before the police sought and obtained the warrant, it would have been reasonable for the trial court to conclude that the examiner was simply mistaken as to the date on which he first examined the latent prints and connected them to Mr. Williams.
Mr. Williams prevails on his argument that this court must merge his attempted' robbery and corresponding PFCV conviction with his felony murder conviction. “[A] person cannot be convicted of both felony murder'and the underlying felony that supported the felony murder conviction.” Matthews v. United States, 13 A.3d 1181, 1191 (D.C.2011). Accordingly, we remand the case with instructions for the trial court to vacate Mr. *351 Williams's convictions for attempted robbery and the associated count of PFCV. See Morris v. United States, 622 A.2d 1116, 1130 (D.C.1993) (holding that when two predicate crimes for PFCV merge into one, the PFCV offenses also merge).
In all other respects, we affirm the judgment of the trial court.

So ordered.

Concurring opinion by Associate Judge EASTERLY.

. D.C.Code §§ 22-2802, -4502, -1801 (2001).

. D.C.Code § 22-4504(b) (2001).

. D.C.Code § 22-4504(a) (2001).

, This was Mr. Williams’s ^second trial; the first trial ended in a mistrial after the jury was unable to reach a verdict.

. The government also called a witness’who had agreed to testify against Mr. Williams in return for the government's assistance at the witness's pending sentencing for aggravated assault, a charge carrying up to thirty years imprisonment. The witness testified that, after he met Mr, Williams for the first time in the cellblock at the courthouse, Mr. Williams -told- the witness that he was "fighting a body"; that the police had recovered his fingerprints from the victim’s car even though he had tried to wipe it clean; that the police had recovered a gun, but he had wiped his prints off the gun; and that "it was in his favor” that the police had not tested bullets recovered from the victim to see if they matched bullets fired from his gun.

. We question whether the government presented sufficient evidence that Mr. Williams intended to steal Mr. Kang’s car before he shot him. See Head v. United States, 451 A.2d 615, 625 (D.C.1982) ("[M]ere coincidence in time of a robbery and a murder is insufficient to support a felony murder conviction.”); see also United States v. Bolden, 514 F.2d 1301, 1307 (D.C.Cir.1975) (holding that the intent to rob must be formed before the homicide to convict a defendant of felony murder). But Mr. Williams did not raise that argument on appeal.

. This assessment is made by examining the state of the law at the time of appellate review. Henderson v. United States, — U.S. -, 133 S.Ct. 1121, 1127, 185 L.Ed.2d 85 (2013). Accord, Muir v. District of Columbia, 129 A.3d 265, 267, 273-74 (D.C.2016).

. Commonwealth v. Heang, 458 Mass. 827, 942 N.E.2d 927, 944-45 & n. 29 (2011).

. Even in the absence of binding precedent or a raft of persuasive authority on point, we may find plain error where a trial court acts in contravention of "well-settled legal principles.” See Conley, 79 A.3d at 290.(" '[Plainness’ of [an] error can depend on well-settled legal principles as much as well-settled legal precedents." (quoting United States v. Brown, 352 F.3d 654, 664 (2d Cir.2003))). Mr. Williams has made no argument that the trial court plainly erred on this basis.

. Moreover, we question whether this court would want to endorse a policy of "only eliciting] firearms examiners' opinions to a reasonable degree of scientific certainty,” in light of criticism that firearms examination does not involve any "scientific” measure of certainty. See National Research Council, Committee on Identifying the Needs of the Forensic Sciences- Community, Strengthening ' Forensic Science in the United States: A Path Forward 154-5.5 (2009); National Research Council, Committee to Assess the Feasibility, Accuracy, and Technical Capability of a National Ballistics Database, Ballistic Imaging 3, 81-82 (2008).

.Mr, Williams appears to concede that Jones itself did not plainly establish that statements of absolute certainty were prohibited and argues instead that "because of its prior assurances” in Jones, the government should be estopped from arguing that the admission of certainty statements of the sort elicited in this case is not plain error. But the govern *349 ment in Jones never took a position as to plain error review (because the challenge to the firearms and toolmark examiner's testimony was preserved). Meanwhile, in this appeal, the government has not disavowed its policy and concedes it was violated at Mr. Williams’s trial. Ward v. Wells Fargo Bank, N.A., 89 A.3d 115, 126-27 (D.C.2014) (reviewing the elements of judicial estoppel and explaining inter alia that it will apply only if the party’s later position is clearly inconsistent with its earlier position).

. Mr. Morales explained that the lead examiner is “basically the examiner that’s assigned and responsible for the examination" of tool-marks; he was designated the. "second examiner,” He further explained that, at the time the firearms evidence was received, Ms, Brown "was not available; it was early in the morning.” "[Sjince I was the second, I was the reviewer ... of that case. My responsibility was to perform the examination between the items.”

.Mr. Williams additionally contends that he was deprived of his Sixth Amendment right to a jury trial because Mr. Morales gave overly conclusory testimony, failed to present the images or other “documentation” underlying .hjs opinions, and "deprived the. jury of the ability to make a decision based on the evidence.” Again, this argument was never made in the trial court and we review for plain error, We discern none. We acknowledge that at least one federal district court has ruled that the government’s presentation of pattern-matching testimony by a forensic expert is contingent on its presentation 'of sufficient documentation to permit the jury to meaningfully evaluate the expert’s subjective conclusions. See United States v. Glynn, 578 F.Supp.2d 567, 574 n. 13 (S.D.N.Y.2008); see also Heang, 942 N.E.2d at 945 n. 30 (urging but not requiring firearms and toolmark examiners to "explain the basis of any opinion with sketches, photographs, or, best of all, comparison photographs”). But, to date, this court has not so held.

. Conley, 79 A.3d at 276, 290 (explaining that the third prong of the plain error standard requires the appellant to identify an error that "affected his substantial rights”). In light of our above resolution of Mr. Williams’s challenges to the toolmark and fingerprint evidence, we reject Mr. Williams's argument that the trial court’s cumulative errors regarding the admission of thé government's tool-mark and fingerprint evidence require reversal.

, Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).